217 N.J. Super. 496 (1987)
526 A.2d 266
LUIS PHILLIPE MORALES AND MARIA MORALES, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
JOSE S. SANTIAGO AND MARINA SANTIAGO, HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 7, 1987.
Decided May 18, 1987.
*497 Before Judges ANTELL and BRODY.
*498 Robert C. Auriemma, attorney for appellants.
Harvey F. Anger, attorney for respondents (Joseph V. Meyers on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Defendants Jose and Marina Santiago (sellers) appeal from an order denying their motion to vacate a default judgment entered against them in the amount of $36,050. Plaintiffs (buyers) contended in this action that sellers broke a written contract to sell them their home for $75,000. There was evidence at the default judgment hearing (proof hearing) that sellers refused to convey the property unless buyers paid an additional $10,000. The trial judge heard the testimony of the broker as to value and considered the fact that sellers relisted the property a year later for $132,500. He found that the property was worth $110,000 and that sellers must pay $1,050 interest for the 14 months that their attorney retained the $7,500 deposit. We reverse and vacate the default judgment.
Sellers' litigation attorney made the motion to vacate the default judgment the month following its entry, immediately after sellers learned of the judgment in the course of applying for a mortgage loan on the property. The notice of motion did not state the grounds upon which it was made as required by R. 1:6-2(a), it was not accompanied by a brief as required by R. 4:50-1, and it was decided without a plenary hearing or oral argument, none having been requested. The motion was supported by the affidavits of Marina Santiago and Jorge Gonzales, the attorney who represented sellers in connection with the sale.
Marina Santiago stated the following in her affidavit. She denied having been served with the summons and complaint. She first learned of this action when she received a letter dated May 12, 1986, from Joseph Meyers, an associate in the office of buyers' attorney, Harvey Anger, advising his clients that the *499 proof hearing was scheduled for May 30. Meyers had inadvertently addressed the letter to sellers' home. She took the letter to Gonzales who assured her that "he would take care of it." Later Gonzales told her that Anger would postpone the hearing to enable her to obtain a litigation attorney. As to the merits of the case, Marina Santiago stated in her affidavit that "a binder may have been signed, but was never signed by Jose S. Santiago, my ex-husband, and a Contract was never signed."
Gonzales stated the following in his affidavit. He first learned of the complaint when Marina Santiago "brought a letter to me concerning a Proof Hearing in May." He telephoned Anger and tried to settle the matter with him. When sellers declined to settle, Gonzales told Anger "that since there was the possibility that I would be a witness in this case, that Marina Santiago should seek counsel elsewhere." Anger consented to postpone the proof hearing and "advised me that his office staff would handle the postponement." As to the merits of the case, Gonzales stated only, "I feel that the defendants definitely have a meritorious defense to this claim."
In opposition to the motion, buyers filed a letter brief and the affidavit of Joseph Meyers with exhibits attached. Meyers' affidavit presents the following fuller picture. Buyers and Marina Santiago signed a broker-prepared "Offer & Acceptance" (binder), dated January 25, 1985, that was made "subject to Attorney approval." The binder lacked certain basic terms of a contract for the sale of real estate such as the date of closing, the kind of deed to be given, buyers' deadline for obtaining the mortgage and the duration of the mortgage to be obtained. Buyers gave the broker $500 as a partial deposit. The binder provided that an additional $7,000 deposit be made "on signing of contract." Thereafter Gonzales prepared a form of contract and mailed unsigned copies to Anger with a letter dated February 15, 1985, in which he asked for the return of the copies signed by buyers and for the remaining $7,000 deposit. A month later Anger returned signed copies of the contract together with buyers' check in the amount of $7,000.
*500 Sellers never signed the form of contract. By letter dated April 29, 1985, Anger expressed his clients' displeasure because Gonzales had not returned a contract signed by sellers and because Marina Santiago had refused to permit buyers' mortgage bank representative to examine the house. Anger threatened suit on "the contract." By letter dated May 20, 1985, Gonzales notified Anger "that since we had been unable to reach an agreement regarding paragraph 28 of the Contract, which was [initially] unacceptable to your clients and essential to my clients' acceptance of the offer made herein, please accept this letter as our formal cancellation of the aforesaid transaction." Paragraph 28, an important term of the form of contract Gonzales prepared, had no counterpart in the binder. It permitted either party to cancel the contract if sellers were unable within 45 days of the date of contract to purchase another residential property.
A sheriff's return recites that sellers were served on February 20, 1986, by leaving copies of the summons and complaint with their daughter at their home. Buyers had commenced this action after Anger had received a letter from Gonzales dated January 29, 1986, in which he stated, "I have tried, with no success to have Mr. and Mrs. Santiago come in to discuss the return of the deposit monies in this matter...." Less than a week after sellers were allegedly served with process, Gonzales returned the deposit to Anger. Anger sent Gonzales a letter dated February 27, 1986, acknowledging return of the deposit. Accompanying the letter was a copy of the summons and complaint, which Anger asked Gonzales to acknowledge as service upon sellers. Meyers stated in his affidavit that he, not Anger, had handled the default proceedings. He further stated that he had spoken to Gonzales over the telephone about the proof hearing but denied that he had agreed to postpone it.
A party may be relieved from a final judgment or order on various grounds specified in R. 4:50-1 including:
(a) ... excusable neglect

*501 ....
(d) the judgment or order is void
....
(f) any other reason justifying relief from the operation of the judgment or order.
We do not know which grounds the trial judge considered in denying the motion because none were specified in the notice of motion and, contrary to the requirements of R. 1:7-4, the judge made no findings of facts and stated no conclusions of law. We will discuss the three grounds that we have noted because they appear to have been invoked by the contents of sellers' affidavits.
Generally "the opening of default judgments should be viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." Marder v. Realty Construction Co., 84 N.J. Super. 313, 319 (App.Div. 1964), aff'd, 43 N.J. 508 (1964).
We first discuss whether sellers defaulted because of excusable neglect. "[A] defendant seeking to reopen a default judgment [because of excusable neglect] must show that the neglect to answer was excusable under the circumstances and that he has a meritorious defense." Id., 84 N.J. Super. at 318.
Sellers have a meritorious defense. The binder does not appear to be a contract. Facially it does not bind Jose Santiago, one of the sellers, because he did not sign it. The absence of his signature is also evidence that the parties did not treat the binder as a contract.
The binder expressly contemplates a later "signing of contract" when the main portion of the deposit would be paid. Parties may or may not be bound by their preliminary agreement when they contemplate that its terms will later be reduced to a formal written contract. Whether the preliminary agreement is binding is a matter of the parties' intent. 1 Corbin on Contracts, § 30 at 97-112 (1963). If the parties intend to be *502 bound by their preliminary agreement and view the later written contract as merely a memorialization of their agreement, they are bound by the preliminary agreement. On the other hand, if the parties intend that their preliminary agreement be subject to the terms of the later contract, they are not bound by their preliminary agreement. The trial judge simply stated that the binder was the parties' contract. He made no findings on the critical issue of the parties' intent.
Absence of essential terms from a preliminary agreement is persuasive evidence that the parties did not intend to be bound by it. The preliminary agreement in Steinberg v. Wisisch, 6 N.J. Misc. 819 (Sup.Ct. 1928) read:
Received of Nathan Steinberg the sum of $200 as part of purchase price on property known as 281 Jeliff avenue, Newark, N.J.
The purchase price is $9,000. The seller agrees to accept a second mortgage of $2,000 second in lien to a first mortgage, and to be procured by purchaser and balance in cash. Purchaser agrees to pay $300 more when agreement of sale is drawn. [6 N.J. Misc. at 819]
The court reversed a judgment entered on a directed verdict against the seller who had refused to sign a later contract. It reasoned:
But this so-called contract was silent as to the amount of the first mortgage, and as to the duration, the rate of interest and the default clauses of both the first and second mortgages; no mention was made as to the kind of deed to be given or when title was to pass; provision, however, was made for an additional payment when "Agreement of Sale is drawn." This latter provision, together with the omission of the essential terms of a contract for sale of real estate clearly indicate that the writing was not a final contract, but was rather in the nature of a temporary receipt, and was so characterized by plaintiff's attorney, who drew it. [Ibid.]
As previously noted, the binder here also lacked essential terms of a contract for the sale of real estate and contemplated that the parties would sign a later final contract.
Furthermore it would appear that buyers recognized that the binder was not a contract because there is evidence that they agreed reluctantly to paragraph 28 of the form of contract prepared by Gonzales. If buyers believed that sellers were bound by the binder, they could simply have rejected the *503 provision in Gonzales's form of contract that introduced an unwanted contingency that had not been in the binder.
Before leaving the topic of meritorious defense, we note that there was no evidence at the proof hearing to support the benefit-of-the-bargain damages that the trial judge awarded. The proper measure of damages in this kind of case is set out in Donovan v. Bachstadt, 91 N.J. 434, 445 (1982):
The specific elements to be applied in any given case of a seller's breach of an executory agreement to sell realty may vary in order to achieve the broad purposes of reparations; some of the items, however, will almost invariably exist. Thus the purchaser will usually be entitled to the return of the amount paid on the purchase price with interest thereon. Costs and expenses incurred in connection with the proposed acquisition, such as for the title search and survey, would fall in the same category. The traditional test is the difference between the market price of the property at the time of the breach and the contract price.
The trial judge properly awarded interest on the deposit and, buyers having incurred no expenses, properly did not award damages for expenses incurred in connection with the proposed acquisition.
No evidence was presented, however, to support the trial judge's award of $35,000 for buyers' loss of the benefit of the bargain "at the time of the breach." That figure is based on evidence that sellers were asking $132,500 for the property in a listing given a full year after Marina Santiago signed the binder and on the broker's testimony in answer to whether the property could have been sold for that sum:
No. My opinion at the time, it could be something about $115,000, $120,000, the most.
The judge's entire finding on this important point was, "I think that the difference in value, the loss of the bargain, is much more likely to be $35,000...." Thus the judge found that at some unspecified time, not necessarily related to the occurrence of the alleged breach, the property was worth $110,000.
Although sellers now argue that they failed to answer the complaint because of excusable neglect, they have not conceded neglect. They and their attorney Gonzales took the position in their affidavits that they had not been served and were therefore *504 unaware that there was a complaint to be answered. If they had been served, their neglect was not excusable.
However, if sellers had not been served with process they were entitled to have the judgment vacated because it is void. R. 4:50-1(d). The sheriff's return of service contradicts sellers' contention that they were not served, but facts stated in a sheriff's return are rebuttable by clear and convincing evidence. Garley v. Waddington, 177 N.J. Super. 173, 180-181 (App.Div. 1981). Gonzales's statement that he first learned of the suit when Marina Santiago brought him Meyers' May 12, 1986 letter is undercut by Anger's February 27 letter enclosing a copy of the summons and complaint for Gonzales to acknowledge. Yet no evidence was submitted that Gonzales acknowledged service or that he advised his clients of the suit. While it is surely the fault of sellers' attorney that these matters were not adequately put in issue on their motion to vacate the default judgment, the fact remains that the trial judge denied the motion without finding that sellers were served and without ordering a plenary hearing to resolve the issue.
Even if sellers had been served with process, the cumulative effect of our misgivings about this default judgment impels us to vacate it under R. 4:50-1(f), "any other reason justifying relief from the operation of the judgment or order." Although a judgment may be vacated on that ground only in exceptional cases, the boundaries of that subsection of the rule "are as expansive as the need to achieve equity and justice." Court Invest. Co. v. Perillo, 48 N.J. 334, 341 (1966).
We base our conclusion on the following factors. The usual deference that we must pay to a trial judge's determination of an R. 4:50-1 motion is less compelling here where the judge made no findings to explain the reasons why he denied the motion. Sellers were ill-served by their attorneys: one failed to confirm that the proof hearing had been adjourned and the other failed to present their case adequately on the motion to vacate. See Court Invest. Co. v. Perillo, 48 N.J. at 347. The *505 judgment was obtained by default and is therefore more vulnerable to being set aside. Sellers moved to vacate the judgment soon after it was entered.
Our primary concern is that sellers have suffered a substantial judgment that appears to be undeserved on the merits. Without more, however, having a meritorious defense is ordinarily not a ground for setting aside a default judgment. At a proof hearing "ordinarily the decision of whether to require ... proof [of liability] where there appears to be some question of that right, should be left to the discretion of the judge." Douglas v. Harris, 35 N.J. 270, 276-277 (1961). For instance, a judge might properly not require a plaintiff to prove liability in a case where the defaulting defendant exclusively controls key evidence. Cf. R. 4:23-2(b)(1), which permits a judge to sanction a party who disobeys a discovery order by entering an "order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order...."
However, where in the exercise of discretion, the trial judge at a proof hearing concludes that justice requires the plaintiff to prove liability, if the evidence, even when viewed indulgently, demonstrates that the defendant is not liable, upon timely motion a default judgment entered on that evidence must be vacated under R. 4:50-1(f). See Johnson v. Johnson, 92 N.J. Super. 457, 465 (App.Div. 1966) (defendant may appeal default judgment where plaintiff failed to prove liability and damages after court had ordered her "to prove her case"). The interests of justice are further served by vacating the default judgment here in view of the other equities favoring sellers that we have noted.
Although buyers' evidence at the proof hearing fell short of proving a contract, we will afford them an opportunity to present their evidence in full, as to liability and damages, at a trial after both sides have had the benefit of discovery.
*506 The order denying the motion to vacate the default judgment is reversed and the matter is remanded for further proceedings.