**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2389-16T4

CAMDEN CITY SCHOOL
DISTRICT,

     Plaintiff-Respondent,

v.

TRACEY PITTS,

     Defendant-Appellant.

_____

Argued March 4, 2019 – Decided July 26, 2019

Before Judges Haas and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-4198-15.

Morrison Kent Fairbairn argued the cause for appellant (Michael A. Armstrong & Associates, LLC, attorneys; Morrison Kent Fairbairn, on the brief).

Joseph G. Antinori argued the cause for respondent (Brown & Connery, LLP, attorneys; Joseph G. Antinori, on the brief).

PER CURIAM

This appeal asks us to determine whether plaintiff Camden City School District (the District) and defendant Tracey Pitts reached a binding settlement agreement in which the District would not certify tenure charges to terminate her employment as a tenured teacher in consideration for her resignation and continuing to pay her salary until the effective date of her resignation. The trial court denied Pitts' summary judgment motion seeking a declaration that she should be allowed to return to employment because the settlement agreement was not binding upon her, as she did not sign it, or in the alternative, she revoked it within seven days after it was presented to her. Instead, the court granted the District's cross-motion for summary judgment asserting that there was a binding agreement despite Pitts' refusal to sign the agreement because the District did not pursue her termination and paid her salary through her intended resignation date based upon her promise to resign. The court also denied Pitts' motion for reconsideration.

Even though we conclude the parties' failure to sign the settlement agreement was contrary to an essential term of the agreement and Pitts' exercised her right to revoke the agreement, we affirm because the District detrimentally relied on Pitts' promise to resign by paying her salary up to her intended

resignation date and not pursuing the administrative process under school law to terminate her employment.

I.

We glean the following facts from the record. On August 21, 2015, the District served tenure charges on Pitts, a teacher in the District for twenty-seven years, pursuant to the Teacher Effectiveness and Accountability for the Children of New Jersey Act, N.J.S.A. 18A:6-10 to -18.1, to terminate her for reasons of inefficiency. However, the prosecution of the tenure charges was curtailed when the parties engaged in settlement negotiations.

Initiation of Settlement

After serving the tenure charges on Pitts, the District was required to certify them by filing them with the Commissioner of Education within thirty days, by September 20. N.J.S.A. 18A:6-17.3(b); N.J.A.C. 6A:3-5.1(c)(4). Once the charges were certified, the District could have suspended Pitts without pay for 120 calendar days, but thereafter would have had to return her to the payroll until the Commissioner determined whether to uphold her termination. N.J.S.A. 18A:6-14.

In order to avoid the prosecution of tenure charges, Pitts' counsel advised the District's counsel via email on September 9, that Pitts was willing to retire.

A-2389-16T4

The email further indicated Pitts wanted to "remain on the payroll until January 1, 2016, since it was her intention to retire at the end of the 2016-2017 school year[,]" because "this date will make a big difference in the amount of her monthly pension that she receives." Negotiations between the parties' respective attorneys began thereafter to formalize the agreement in writing.

On October 15, Pitts' counsel emailed the District's counsel requesting that the settlement agreement provide that Pitts' resignation be October 31, rather than retirement. The District's counsel forwarded a final draft of the written settlement agreement to Pitts' counsel on October 23.

The Written Settlement Agreement

We detail several provisions of the five-page written "SETTLEMENT AGREEMENT AND RELEASE" that are relevant to our decision. The first paragraph provided that it "shall take effect on the date it is fully executed by the Parties, and as such, deemed ratified by the State Superintendent as the authorized representative of the District in accordance with N.J.S.A. 18A:7A-35." The second paragraph stated that Pitts was required to author an "irrevocable letter of intent to resign" effective October 31, 2015, in consideration for the District not certifying the tenure charges and to pay her salary through October 31.

Referencing the requirements of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and the Older Workers Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f), the sixth paragraph indicated that Pitts acknowledged: she was afforded twenty-one days to review the agreement; she had seven days following its execution to revoke the agreement through written notice by her counsel; and the agreement would not become effective until after the revocation period expired. See 29 U.S.C. § 626(f).

Non-execution of the Settlement Agreement

Despite the parties' settlement negotiations, neither Pitts nor the District's State Superintendent signed the agreement. Pitts did not show up at her counsel's office on October 23, to review and execute the settlement agreement, according to her counsel. Consequently, after an early-morning phone call with Pitts on October 26, her counsel emailed the District's counsel at 8:24 a.m. advising that Pitts had a change of heart and would not sign the agreement. Her counsel nonetheless indicated she would confirm Pitts' decision later that day. Within two minutes of the email, the District's counsel responded with an email asserting that an agreement was "confirmed whether [Pitts] signs the [a]greement or not."

Three days later, on October 29, District's counsel emailed Pitts' counsel a letter detailing the parties' settlement efforts and contending Pitts resigned from employment in the District effective October 31, and she would be paid her salary through that date. About an hour later, Pitts' counsel emailed a letter responding that Pitts no longer desired to resolve the tenure charges by executing the settlement agreement. The letter further asserted that by keeping Pitts off the payroll since September, despite counsel's requests that her salary be paid, the District had breached any agreement it claimed was reached by the parties.[1]

Lawsuit and Summary Judgment In Favor Of The District

The District responded to Pitts' refusal to execute the settlement agreement by filing a complaint in the Law Division on November 5, alleging breach of contract and seeking a declaratory judgment that she must resign in accordance with the settlement agreement negotiated by the parties' attorneys.

The trial court granted the District's motion to proceed summarily on January 8, 2016, subject to a brief discovery period. The District later amended

---

[1] Pitts was not paid her salary for the first half of October 2015. This was inadvertent, according to District counsel, who had the situation promptly corrected upon being notified by Pitts' counsel.

A-2389-16T4

its complaint by also seeking relief based upon promissory estoppel; contending that Pitts caused the District to rely on her promise to resign to its detriment.

At the conclusion of discovery, Pitts moved for summary judgment. She argued there were no material facts at issue that would prevent a ruling as a matter of law because there was no binding settlement agreement between her and the District. Conversely, the District cross-moved for summary judgment contending there was a binding agreement upon which it performed.

On July 22, the court denied Pitts' summary judgment motion to dismiss the District's complaint and granted the District's cross-motion. The court ruled:

> I find that there was a clear agreement and that clear agreement was embodied by the discussions between counsel all the way up to the point in time where [Pitts' counsel] told [the District's counsel] in terms of reviewing the agreement that the agreement was in order subject to some revisions that [Pitts' counsel] sought on behalf of [Pitts], and [the District's counsel] on behalf of the District agreed to those and sent the document to [Pitts' attorney] at which point even [Pitts' attorney] believed that the only thing . . . that was gonna happen thereafter was that her client was gonna sign the document and formalize it in writing. [Pitts' counsel] agreed with [the District's counsel] on behalf of their clients that they had a deal. No misgivings, no caveats. The two attorneys representing these entities had a meeting of the minds. They were authorized to represent the entities and they did so, and the deal was embodied fully in the document that was revised . . . and sent back to [Pitts' counsel] . . . .

So I find there was an agreement and that was the agreement . . . drafted as of October 23 . . . .

After the ruling, Pitts sent a letter to the District indicating that she was revoking her court-ordered acceptance of the settlement agreement within seven days of the judge's ruling. The District rebuked the request, contending it was untimely and inconsistent with the court's order.

Pitts filed a motion for reconsideration, which was denied on the papers on September 2, for the same reasons as the court's earlier rulings. However, for reasons that are unclear, neither party received the court's September 2 order until Pitts' counsel received it on November 22. Given that the forty-five day timeline under Rule 2:4-1 to appeal the September 2 order had expired, Pitts moved to amend the effective date of the order to January 3, 2017, to allow her to file a timely appeal. The motion was denied on January 6. This appeal followed.

On November 17, we denied the District's motion to dismiss the appeal but granted its request to strike portions of Pitts' brief addressing the trial court's summary judgment and reconsideration orders as being untimely appealed. Revised briefs were submitted thereafter.

At oral argument for the appeal on September 17, 2018, we sua sponte directed Pitts to file a motion to appeal the July 22, 2016 and September 2, 2016

A-2389-16T4

orders, regarding summary judgment and reconsideration, respectively, as timely filed. On October 18, we granted Pitts' opposed motion in the interest of justice, "[b]ased on the idiosyncratic facts presented in this case[,]" and ordered a schedule for the submission of revised briefs. Thus, Pitts was permitted to appeal the merits of the summary judgment and reconsideration orders.

Related Administrative Agency Proceedings

Almost two months after the District sought relief in this civil action, the first of two administrative proceedings were initiated on December 28, 2015, when Pitts filed a petition, including an application for emergent relief, with the Commissioner. She claimed the settlement agreement was never finalized and, therefore, the District had violated her tenure rights by removing her from the payroll without certifying the tenure charges to the Commissioner.

An Administrative Law Judge (ALJ) denied the emergent relief request on January 22, 2016.[2] The ALJ reasoned Pitts was not entitled to emergent relief under Crowe v. DeGoia, 90 N.J. 126, 132-33 (1892), because she failed to establish that she would suffer irreparable harm if she was not reinstated to her teaching position. The Commissioner adopted the ALJ's decision. The decision was not appealed.

---

[2] The decision was incorrectly dated "January 22, 2015."

The merits of the petition were determined following the trial court's denial of Pitts' reconsideration motion. On January 30, 2017, the then acting Commissioner adopted the initial decision of a different ALJ, with modification. The Commissioner ruled that the tenure dispute involved the interpretation of a contract – whether the settlement agreement was revoked by Pitts – which was beyond his jurisdiction, as it did not involve the interpretation of school law. Tracey Pitts v. State-Operated Sch. Dist. of the City of Camden, Camden Cty., EDU 23-16, final decision, (Jan. 30, 2017), http://njlaw.rutgers.edu/collections/oal/html/initial/edu00023-16_1.html. Thus, Pitts' petition was dismissed without prejudice. She did not appeal the decision.

The second administrative proceeding was initiated on May 6, 2016, when the District certified the tenure charges to the Commissioner, which it served on Pitts on August 21, 2015. Two months later on July 14, 2016, the matter was promptly decided when the Commissioner granted Pitts' motion to dismiss the tenure charges. The Commissioner determined the tenure charges were untimely under N.J.S.A. 18A:6-17.3(b) and N.J.A.C. 6A:3-5.1(c)(4), because they were not certified within thirty days after they were served on Pitts. The District also did not appeal the decision.

In her appeal, Pitts contends there was no enforceable settlement agreement between her and the District because she never signed the agreement; the agreement was not ratified by the State superintendent; and the written agreement indicates that the parties had not reached an enforceable agreement prior to the execution of the written agreement. In rebuttal, the District argues there is an enforceable agreement because there was a binding settlement agreement based upon a meeting of the minds, and Pitts' counsel exercised his authority to bind her to the settlement agreement. The District also argues that, based upon promissory estoppel, Pitts should be estopped from contending she is not bound by her agreement to resign in order to avoid tenure proceedings because the District acted on that agreement by not certifying the tenure charges and paid Pitts' salary up until her anticipated resignation date. Accordingly, we review the relevant law and consider it in the context of the facts pertinent to these arguments.

We first acknowledge that "[o]n a disputed motion to enforce a settlement," a trial judge must apply the same standards "as on a motion for summary judgment[.]" Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474 (App. Div. 1997). "If there is no genuine issue of material fact," then we must "decide

whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). Appellate review of a ruling on a motion for summary judgment is de novo, applying the same standard governing the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). In addition, we review the court's denial of reconsideration only for abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). We accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512-13 (2009)). Reconsideration is "a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

A.

We are fully aware that our state has a strong public policy in favor of settlements. Brundage v. Estate of Carambio, 195 N.J. 575, 601, (2008). Essentially, a settlement agreement is a contract. See Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (citing Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983). "As a general rule, courts should enforce contracts as the parties

intended." Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (citations omitted). "[P]arties may orally, by informal memorandum, or by both agree upon all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking." Comerata v. Chaumont, Inc., 52 N.J. Super. 299, 305 (App. Div. 1958). However, when parties contemplate that terms of a preliminary agreement will later be reduced to a formal written contract, whether the preliminary agreement is binding is a matter of the parties' intent. Morales v. Santiago, 217 N.J. Super. 496, 501 (App. Div. 1987). "Absence of essential terms from a preliminary agreement is persuasive evidence that the parties did not intend to be bound by it." Id. at 502. It is well settled that "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting Borough of W. Caldwell v. Borough of Caldwell, 26 N.J. 9, 24-25 (1958)). If the parties agree on the essential terms and agree to be bound by those terms, they have created an enforceable contract. Ibid.

In the case at hand, it is clear that the parties intended, and the settlement agreement so reflected, that the District would forgo the termination of Pitts'

employment in return for her letter of resignation effective October 31, 2015, and keeping her on the payroll until she resigned. It is equally clear that these terms were satisfied. However, an essential term of the agreement was not performed: the parties did not execute the settlement agreement. Based upon the written agreement that was finalized by the parties' attorneys on October 23, it was clearly intended that the agreement only take effect when the parties signed it. As noted above, the agreement stated it "shall take effect on the date it is fully executed" by the parties. Thus, if it was not signed, it could not take effect. The fact that the requirement was set forth in the agreement's first paragraph, to some extent, emphasizes its importance.

Moreover, the provision that gave Pitts seven-days to revoke the agreement after it was executed is also an essential term of the agreement. The District maintains that the seven-day revocation clause applies in limited circumstances where an employee seeks to assert an age discrimination claim under federal law. The District asserts Congress amended the ADEA when it passed the OWBPA in 1990 under which an employee can only waive a claim of age discrimination under the ADEA if the employee is provided up to twenty-one days to review an agreement and then seven days to revoke if executed. See 29 U.S.C. § 626(f). Therefore, the District argues that contrary to defendant's

assertion that federal law "requires" a revocation provision, instead the OWBPA provisions are inserted into settlement agreements at the parties' discretion and only apply in the narrow and limited situation where the employee agrees to waive an ADEA age discrimination claim. Since Pitts never alleged age discrimination or that the settlement should be revoked because the District discriminated against her because of her age, the revocation period does not apply here.

We take no issue with the District's contention that the revocation provision was attributed to federal law pertaining to the ADEA. Yet, the provision was placed in the agreement without any precondition that she had to make an ADEA claim. It affords Pitts the right to revoke the agreement within seven days after she executes the agreement and sets forth the manner in which she can do so. It thus appears that in order to take advantage of this escape clause, Pitts would have to sign the agreement. If her actions would have bound her to the agreement without her execution of the agreement as the court determined and the District argues before us, it would appear that Pitts still had seven days to revoke the agreement. Seemingly, this revocation occurred when her counsel advised the District's counsel on October 26 and 29, that Pitts did not want to go through with the settlement.

B.

To rebut Pitts' contention that her lack of signing the agreement was immaterial, the District contends that she was bound to the agreement because her counsel had the authority to bind her and did so through the negotiations with the District's counsel. We disagree.

While a party's counsel can enter into a settlement on behalf of his or her client, there must be "actual or apparent authority to do so." Seacoast Realty Co. v. W. Long Branch Borough, 14 N.J. Tax. 197, 202-03 (Tax 1994) (citing United States Plywood Corp. v. Neidlinger, 41 N.J. 66, 73-74 (1963)). Apparent authority is created when "the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be justified in presuming that the attorney had authority to enter into a settlement, not just negotiations, on behalf of [a] client." Amatuzzo, 305 N.J. Super. at 475. Where the principal "places the attorney in a position where 'a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question.'" Seacoast Realty Co., 14 N.J. Tax at 204-05 (quoting Neidlinger, 41 N.J. at 74); see also LoBiondo v. O'Callaghan, 357 N.J. Super. 488, 497 (App. Div. 2003) (creation of apparent authority is based on "the actions of the

16

principal, not the alleged agent."). Therefore, "sending an attorney to a settlement conference presumptively establishes that the attorney has authority to settle . . . ." Id. at 204.

There are no facts that support the District's contention that Pitts' counsel had actual or apparent authority to bind her client by accepting the settlement agreement. Nothing in the emails or letters between the parties' attorneys would suggest that Pitts' counsel had the authority to bind Pitts to settlement terms that were being negotiated. This appeared to be the standard negotiations process in which the parties used their legal representatives to work out the terms of an agreement that was subject to the parties' approval. In fact, the final written agreement transmitted by the District's counsel to Pitts' counsel provided that the parties had to execute the agreement in order for it to be effective. Furthermore, we find no legal support for the contention of the District's counsel, made at argument before us, that he had the authority to bind the District, a public body, to an agreement intended to avoid or terminate its statutory authority to litigate a matter. See Jersey City v. Roosevelt Stadium Marina, 210 N.J. Super 315, 327 (App. Div. 1986) (citing Stout v. Stout, 155 N.J. 196, 203-04 (App. Div. 1977)).

## C.

Lastly, we find merit to the District's claim that Pitts should be estopped from rescinding her promise to resign effective October 31, 2015, because it acted on that promise to its detriment by not certifying the tenure charges and paying her salary through October 31.

To prove a claim based on promissory estoppel, a party must show: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 253 (2008). Here, all these factors have been satisfied.

There is no question that Pitts promised to resign effective October 31, 2015, if the District agreed not to pursue her termination and keep her on the payroll until her resignation date. In reasonable reliance on that promise, the District agreed not to move forward with its planned termination proceedings by certifying the tenure charges and paying her through her intended resignation date. And when Pitts changed her mind after the full written terms were negotiated and confirmed by their respective attorneys in the settlement agreement, the District could not pursue tenure charges because it was too late; the Commissioner ruled the District failed to certify the charges within thirty

 A-2389-16T4

days after Pitts received them on August 21, 2015, and, therefore, was untimely under N.J.S.A. 18A:6-17.3(b) and N.J.A.C. 6A:3-5.1(c)(4), when the charges were filed on May 31, 2016. Consequently, Pitts must be bound by her decision to resign to avoid tenure proceedings to terminate her employment.

D.

Based upon the principles for granting reconsideration and our ruling that Pitts is bound by her agreement to resign due to promissory estoppel, we discern no reason to disturb the trial court's September 2, 2016 order denying reconsideration of its July 22, 2016 order granting summary judgment to the District and denying summary judgment to Pitts.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION