**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2948-23

RONALD GOLDSTEIN,

    Plaintiff-Appellant,

v.

PROLONG PHARMACEUTICALS,
LLC, AVTAR ENTERPRISE, LLC,
AVTAR INVESTMENTS, LLC,
and CHIRAG PATEL,

    Defendants-Respondents.

---

Argued March 5, 2025 – Decided May 16, 2025

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5606-19.

Ronald Goldstein, appellant, argued the cause pro se.

Stephen C. Matthews argued the cause for respondents (DLA Piper LLP (US), attorneys; Stephen C. Matthews and Patrick R. Dwyer, on the brief).

PER CURIAM

Plaintiff Ronald Goldstein appeals from the trial court's April 12, 2024 order denying his motion to enforce the terms of the settlement agreement that was placed on the record on December 19, 2023. Plaintiff also appeals from the trial court's April 12, 2024 order granting defendants Prolong Pharmaceuticals, LLC, Avtar Enterprise, LLC, Avtar Investments, LLC, and Chirag Patel's cross-motion to enforce the settlement in accordance with their February 14, 2024 written settlement agreement.

The primary issue before us is whether the execution of a release was an essential term of the parties' settlement. We conclude the trial court correctly determined the parties agreed to execute a release to memorialize the settlement agreement. We further address whether the court properly allowed for the inclusion of a non-disparagement agreement in the release and whether it correctly denied plaintiff's request for a reciprocal release. We determine the court erred insofar as it enforced the settlement agreement which included a non-negotiated, non-disparagement clause,[1] but correctly denied plaintiff's request for a reciprocal release. We also conclude the court erred in enforcing other

---

[1] The parties did not initially agree to a confidentiality agreement, but plaintiff subsequently consented to the confidentiality provision in the release, which was confirmed to us at oral argument. Accordingly, we do not address plaintiff's arguments regarding the confidentiality clause.

2

aspects of defendants' proposed settlement agreement. Accordingly, we affirm in part, vacate in part, and remand for further proceedings.

I.

In July 2019, plaintiff, an intellectual property attorney, filed a complaint against defendants asserting claims concerning unpaid invoices for legal services rendered to Prolong pursuant to a consulting contract. On December 19, 2023, after negotiations mediated by the trial court, the parties agreed to resolve the case and placed the following agreed-upon terms on the record: "In exchange for a release of all claims in favor of [defendants] . . . , [defendants] will pay . . . [plaintiff] $240,000 in full and final settlement of his fee claims. Payment to be made within [thirty] days of execution of the release." In addition, defense counsel confirmed that all four defendants would be "jointly and severally" responsible for this settlement amount.

Following the in-court settlement, the parties exchanged various drafts of proposed releases. On December 28, defendants provided plaintiff with an initial draft requiring plaintiff to forever release all claims in favor of defendants and "past, present, and future" parties associated with defendants, "including but not limited to claims" arising out of the services agreement between plaintiff and Prolong. Defendants further included a confidentiality and non-

3                                                          A-2948-23

disparagement clause prohibiting the parties from disclosing the terms of the settlement agreement and from making disparaging statements.

On December 29, plaintiff responded with a revised draft of defendants' release. He informed defendants that their document was unacceptable because it changed the terms placed on the record, created "an overreaching, one-sided [r]elease well beyond the scope of the litigation," and "impos[ed] unfair, after-the-fact settlement terms." In pertinent part, plaintiff's revised release incorporated "a reciprocal release" requiring defendants to forever release all claims in favor of plaintiff and limited the scope of the release to claims arising out of plaintiff's "performance of legal services for Prolong." He also removed the confidentiality and non-disparagement clause.

On January 12, 2024, defendants accepted a few of the changes proposed by plaintiff but retained the original language in the release and the confidentiality and non-disparagement clause from their December 28 document. Notably, defendants' January 12 draft settlement agreement changed the payment provision to state that plaintiff would receive payment "within [thirty] days of the execution of the [s]ettlement [a]greement."

That same day, plaintiff advised defendants that certain terms in the proposal made the "document fatally defective." He asserted the terms of the

4

December 19 settlement were that "the case would be dismissed and that $240,000 would be paid to [plaintiff] within [thirty] days (i.e., by January 18, 2024) . . . ." He also contended defendants' January 12 settlement agreement "incorrectly re-set[] the payment date to 'within [thirty] days of the execution of the [s]ettlement [a]greement.'" He claimed defendants improperly attempted to change the payment date and make the payment an uncertain event contingent on "the execution of an ancillary agreement."

Additionally, plaintiff provided defendants with a "Release of Claims" document that he drafted and signed, which stated:

> WHEREAS, [plaintiff] maintains that he has claims against Prolong . . . arising out of the Confidential Disclosure and Contracted Services Agreement as set forth in <u>Ronald Goldstein v. Prolong Pharmaceuticals, LLC, et al.</u>, Docket No. MID-L-005606-19 (the "Action");
>
> . . . .
>
> NOW, THEREFORE, [plaintiff] hereby fully and forever releases, acquits, and forever discharges [d]efendants from [plaintiff]'s [c]laims.

Plaintiff informed defendants that he understood payment would "be made within [thirty] days of [his] execution of the release." Thus, he claimed his executed "Release of Claims" document satisfied his obligation under the

5

December 19 settlement terms and that "payment [would] be due within [thirty] days from [January 12, 2024]; i.e., no later than February 11, 2024."

On January 17, defendants advised plaintiff they could not accept his proposed release document but instead requested plaintiff execute the January 12 settlement agreement. In response, plaintiff contended defendants' proposed settlement agreement "goes far beyond what is necessary or fair" and "has led to an unreasonable delay of the payment." According to plaintiff, defendants improperly attempted to condition payment on "overreaching, after-the-fact-terms." However, plaintiff advised he was willing to agree to additional terms provided they were fair and appropriate. Accordingly, the parties continued to negotiate the form of the release.

In late January, the parties requested a case management conference, which occurred on February 7. Thereafter, the parties continued to propose varying drafts of the settlement agreement but never agreed on the finalized terms. Notably, the parties could not resolve the scope of the release, whether it should be reciprocal or solely in favor of defendants, the definition of a "disparaging statement," and the effective date for the thirty-day payment period.

6

On February 28, the parties held a meet and confer to resolve the remaining issues pertaining to this settlement. That same day, plaintiff forwarded defendants his draft of the settlement agreement, which was based on defendants' February 14 settlement agreement, and explained his reasons for the proposed changes. Plaintiff incorporated a reciprocal release into his draft settlement agreement. He indicated that based on the holding in Hagrish v. Olson,[2] he "no longer believe[d]" a release in favor of defendants was appropriate, "especially in view of the broad scope of the unilateral release being sought by . . . defendants." Plaintiff also omitted the phrase "including but not limited to" in defendants' proposed release because it would have required him to release claims "well outside the scope of this matter."

He further removed defendants' effective date provision, which stated the settlement agreement would become effective and payment would be made "on the date on which the last [p]arty executes this [a]greement." Instead, plaintiff provided an effective date of March 1, 2024, in the preamble, believing the parties "need[ed] a date certain" to start the thirty-day "clock" for payment. He also proposed the parties would agree "not to make any factually incorrect, disparaging statements regarding each other."

---

[2] 254 N.J. Super. 133 (App. Div. 1992).

 A-2948-23

On March 2, defendants rejected plaintiff's draft release. Specifically, defendants refused to accept the proposed changes to the confidentiality and non-disparagement clause and maintained the parties only agreed "there would be a unilateral release." Defendants also indicated they could "[ ]not accept the effective date language."

On March 20, plaintiff moved to enforce the settlement terms placed on the December 19 record. In April, defendants cross-moved to enforce their February 14 draft of the settlement agreement and sought attorney's fees, costs, and sanctions. The parties' respective settlement terms differed with respect to the scope of the release, the definition of a disparaging statement, and the effective date. Defendants defined the "[e]ffective [d]ate" as "the date on which the last [p]arty executes this [a]greement." In contrast, plaintiff removed the "[e]ffective [d]ate" provision and included in the preamble that "[t]his [s]ettlement [a]greement . . . is effective this 6th day of March, 2024 (the '[e]ffective [d]ate') . . . ."

Furthermore, defendants' release included the following language:

> [Plaintiff], for himself and his successors, heirs, assigns, affiliates, estate, and all other persons with an interest in [plaintiff]'s [c]laims, hereby fully and forever releases, acquits, and forever discharges [d]efendants, and their past, present, and future agents, representatives, shareholders, principals, members,

officers, directors, attorneys, predecessors, successors, and affiliates, from any and all legal, equitable, or other claims, counterclaims, demands, setoffs, or suits <u>from the beginning of the world to the [e]ffective [d]ate, whether known or unknown, including but not limited to claims that arise out of, that may, can, or shall arise out of, or that have, ever had, or could have arisen out of [plaintiff]'s [c]laims and the [s]ervices [a]greement</u>.

[(Emphasis added).]

Plaintiff, on the other hand, offered the following release:

[Plaintiff], for himself and his successors, heirs, assigns, affiliates, estate, and all other persons with an interest in [plaintiff]'s [c]laims, hereby fully and forever releases, acquits, and forever discharges [d]efendants from any and all legal, equitable, or other claims, counterclaims, demands, setoffs, or suits in relation to this matter.

On April 12, the court held oral argument on both motions. The court stated:

<u>Hagrish</u> does not stand for the principle that any release is secondary and is not an essential term of a settlement. <u>Hagrish</u> stands for the principle [that] you have to look at the settlement that was reached and determine what was essential and what is not essential to the term.

The court noted the parties placed the following settlement terms on the December 19 record: "[i]n exchange for a release of all claims in favor of Prolong and the related parties[,] Prolong will pay . . . [plaintiff] $240,000 in full and final settlement of his fee claims[;] payment to be made within [thirty]

9

days of the execution of the release."  Relying on <u>Hagrish</u>, the court stated "those are the essential terms" of this settlement.

The court indicated plaintiff was "wrong" to expect "payment [within thirty] days from the date by which counsel placed the settlement on the record" because he confirmed his understanding of the settlement terms on December 19.  Instead, the court explained "the payment doesn't happen until [thirty] days [from] the execution of the release," and "<u>Hagrish</u> supports that resolution" because the release "is an essential term of the settlement."  The court also rejected plaintiff's "insistence" on defendants' executing a reciprocal release based on their prior threats of filing counterclaims because defendants never filed a counterclaim, and the essential terms placed on the record did not require "defendant[s] to sign a release."

The court further determined defendants' proposed release and confidentiality and non-disparagement clause contained "standard language."  The court noted plaintiff is an attorney who owes duties of confidentiality to his former client under RPCs 1.6 and 1.9, and the release provision contemplated these circumstances.  Accordingly, the court denied plaintiff's motion to enforce settlement "because it is not supported by <u>Hagrish</u>."

A-2948-23

Moreover, the court granted defendants' cross-motion to enforce their February 14 settlement agreement, finding it included the essential settlement terms placed on the December 19 record and contained "standard release language."  It stated plaintiff understood the terms of the parties' oral settlement and must "sign th[e] release" if he wishes to receive the $240,000 payment.  The court informed plaintiff that "upon the execution of the release that was forwarded to [him] on or about February 14 . . . 2024[,] payment would be due to [him] within [thirty] days."  The court denied defendants' motion for attorney's fees, costs, and sanctions.

## II.

On appeal, plaintiff contends the court erred in: denying his motion to enforce settlement based on a misreading of Hagrish; granting defendants' cross-motion, which compelled him to sign a settlement agreement containing unnecessary, unfair, and after-the-fact terms; and not awarding him statutory interest.

## A.

Plaintiff argues Hagrish is directly on point, and the trial court misinterpreted the case.  He claims defendants should be required to make the $240,000 settlement payment because, unlike the Hagrish plaintiffs who refused

11

to sign a release, he provided defendants with his own unilaterally signed release document, satisfying the terms of the December 19 in-court settlement. Plaintiff further argues a release is a mere formality and "as a matter of law, a written release or settlement agreement is not an essential element of settlement."

Defendants, in turn, counter that plaintiff mischaracterizes Hagrish because the execution of a release in that case was not a "required element" of the settlement. They maintain the court correctly found Hagrish was not "substantively identical" to the facts in this matter and the settlement reached here. They also argue that, like Hagrish, the trial court properly determined the settlement included two essential terms: (1) plaintiff's release of claims in favor of defendants, and (2) defendants' paying plaintiff $240,000 within thirty days of the execution of the release.

"Interpretation and construction of a contract is a matter of law for the court subject to de novo review." Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998). "Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011). A court's task is not to "torture the language of [a contract] to create ambiguity." Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (alteration in original)

(quoting Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)). Rather, courts look to the plain terms of the contract and declare the meaning of what is already written, not what, in hindsight, may have been written. See Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001) (explaining a court's task is not to rewrite a contract for the parties better than or different from the one they wrote for themselves).

We are further guided by the well-established legal principles governing settlements. There is a strong public policy in favor of enforcing settlement agreements, which is "based upon 'the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone.'" Brundage v. Est. of Carambio, 195 N.J. 575, 601 (2008) (quoting Peskin v. Peskin, 271 N.J. Super. 261, 275 (App. Div. 1994)).

Generally, settlements are enforced "absent compelling circumstances." Ibid. (quoting Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)). "Consequently, courts 'strain to give effect to the terms of a settlement wherever possible.'" Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005) (quoting Dep't of Pub. Advoc. v. N.J. Bd. of Pub. Utils., 206 N.J. Super. 523, 528 (App. Div. 1985)).

Essentially, a settlement agreement is a contract. Nolan, 120 N.J. at 472 (citing Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983)). "An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Pascarella, 190 N.J. Super. at 124-25 (quoting Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974)). Therefore, a settlement agreement is governed by principles of contract law. Brundage, 195 N.J. at 600-01 (citing Thompson v. City of Atl. City, 190 N.J. 359, 379 (2007)).

Essential terms are those that go to the "heart of the alleged agreement." Satellite Ent. Ctr., Inc. v. Keaton, 347 N.J. Super. 268, 277 (App. Div. 2002). Alternatively, if the parties do not agree to one or more essential terms, their contract is ordinarily unenforceable. See ibid. Where parties have agreed to the essential terms of a settlement, "second thoughts are entitled to absolutely no weight as against our policy in favor of settlement." Dep't of Pub. Advoc., 206 N.J. Super. at 530. Ordinarily, "[w]here the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact that the writing does not materialize . . . ." Harrington v. Harrington, 281 N.J.

Super. 39, 46 (App. Div. 1995) (quoting Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993)). Thus, "[i]f the parties intend to be bound by their preliminary agreement and view the later written contract as merely a memorialization of their agreement, they are bound by the preliminary agreement." Morales v. Santiago, 217 N.J. Super. 496, 501-02 (App. Div. 1987).

Determining whether a release is an essential term of this settlement turns on an application of the principles delineated in Hagrish. There, after a jury found in the plaintiffs' favor, the trial court granted the defendants' motion for judgment notwithstanding the verdict (JNOV). 254 N.J. Super. at 135-36. Before the plaintiff filed an appeal, the parties negotiated a settlement and "[t]he terms were simple: [the] defendants would pay [the] plaintiffs $7,000; in return, [the] plaintiffs would abandon the appeal." Id. at 136.

Thereafter, the defendants' counsel informed the plaintiffs' attorney that the defendants required the plaintiffs to execute a release in their favor, and it would then forward the plaintiffs a draft settlement and disburse the funds. Id. at 136-37. In response, the plaintiffs' counsel requested that the defendants prepare a reciprocal release, but defense counsel declined to do so because such a release was never contemplated. Id. at 137. After the plaintiffs' time to appeal from the JNOV expired, they moved to enforce the settlement. Ibid.

This court disagreed with the trial court's conclusion that a binding settlement did not exist. Ibid. Instead, we noted "[t]he parties had reached a settlement agreement with certain and specific terms:" the defendants would pay the plaintiffs, and the plaintiffs would refrain from appealing the JNOV. Ibid. We stated the case would conclude once the parties completed those "simple conditions." Ibid. Notably, this court found the "[p]laintiffs' failure to execute release documents did not void the original agreement, nor did it render it deficient from the outset." Id. at 138. We noted the execution of a release under the facts in that case "was a mere formality, not essential to formation of the contract of settlement." Id. at 138. Accordingly, we concluded there was no need for an exchange of releases and reversed and remanded for the trial court to enter an order requiring the defendants to make the settlement payment, thereby ending the case. Id. at 139.

Here, plaintiff contends the terms of this settlement are "substantively identical" to those in Hagrish and believes Hagrish broadly stands for the proposition that a written release is not an essential term of a settlement. Plaintiff's narrow reading of Hagrish is misguided. Unlike the facts before us, the release in Hagrish was not an essential term of the settlement but a mere

formality because those parties never contemplated the execution of a release under the original settlement terms.  Hagrish, 254 N.J. Super. at 138.

The trial court in this matter properly interpreted Hagrish in finding plaintiff's execution of a release in favor of defendants was an essential term of the settlement placed on the record.  The terms of the parties' December 19 settlement were simple:  "In exchange for a release of all claims in favor of Prolong and the related parties, Prolong will pay to [plaintiff] $240,000 in full and final settlement of his fee claims.  Payment to be made within [thirty] days of execution of the release."

The essential terms of the parties' settlement included plaintiff's dismissal of the claim, plaintiff's execution of a release, and defendants' payment of $240,000 within thirty days of the execution of the release.  The parties understood and agreed to these specific terms that were set forth on the record.  Thus, plaintiff's execution of a written release was not a mere formality but rather was a central component of this settlement.

In short, a fully executed release was contemplated by the parties.  That is, the written release was not an incidental or tangential formality, but rather an essential, required element of the contract.  The execution of the release itself

A-2948-23

was a specific agreed-upon term. Accordingly, we discern no basis to disturb the trial court's finding that plaintiff was required to execute a release.

B.

Plaintiff next argues the trial court erred in granting defendants' cross-motion to enforce the settlement agreement, as it determined the release contained "standard" provisions found in ordinary releases. Specifically, plaintiff contends the settlement agreement terms are not standard, and the court lacked any basis to impose such terms on him because "[n]o additional legal terms [were] needed to effectuate this settlement."

Plaintiff further maintains the scope of defendants' proposed release language is "excessively broad." He argues the language in the release—"including but not limited to"— encompasses claims unrelated to this matter and the phrase—"from the beginning of the world to the [e]ffective [d]ate"—improperly includes an indefinite duration, not limited to the relevant time period of this case. Plaintiff also notes defendants refused to grant him a reciprocal release.

In contrast, defendants argue the trial court properly granted their motion to enforce the settlement, and the release contained standard and reasonable terms that are contained in "all" settlement agreements.

Initially, we observe plaintiff is not entitled to a reciprocal release according to the agreed-upon terms placed on the record. As stated, one of the essential terms of this settlement agreement was the execution of a written release in favor of defendants. There was no reference to a reciprocal release. Therefore, defendants had no obligation to grant plaintiff's request for a reciprocal release.

Plaintiff avers the court should not have enforced the non-disparagement clause because it was not a necessary term of this settlement, and the parties disagreed on its language. Plaintiff asserts he could not accept the vague non-disparagement language "because he would have . . . no idea exactly whom he'd be agreeing not to disparage" or what would constitute a "disparaging statement."

Where a party seeks new terms not previously agreed upon during settlement, such terms are generally not considered essentials of the settlement but rather are an "afterthought." Bistricer v. Bistricer, 231 N.J. Super. 143, 145, 148-50 (Ch. Div. 1987). "So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 377 (App. Div. 1975).

A-2948-23

We conclude the trial court erred in enforcing the non-disparagement clause because the parties never expressed an intention on the record to include that term as part of the settlement. Rather, it was an additional, non-negotiated term. Indeed, Hagrish supports this conclusion. There, the essential terms of that settlement required the defendants to pay the plaintiffs in exchange for the plaintiffs not to pursue an appeal. Hagrish, 254 N.J. Super. at 135, 137. We only enforced those two terms despite the parties' subsequent requests for releases and the plaintiff's failure to execute one. Id. at 139. Notably, like the releases in Hagrish, the agreement set forth on the record here did not contemplate inclusion of a non-disparagement clause in the release.

We next address plaintiff's argument that defendants' proposed language in the release exceeded the scope of the parties' agreement regarding the nature of the claims released and the time period for the release. As stated, the release is limited to the essential terms placed on the record. Defendants' proposed release is overly broad to the extent it included a release not only from the claims advanced in this case but also from other unknown and unidentified claims. The release should be limited to plaintiff's claims and should be further confined to the relevant time period when the dispute arose and the case was litigated.

Moreover, the parties' agreement on the record—that "[i]n exchange for [plaintiff's] release of all claims in favor of Prolong and the related parties" defendants would make payment within thirty days of the "execution of the release"—suggests only plaintiff's signature was required in order for him to be paid by defendants and does not necessitate defendants' signatures prior to the payment. Accordingly, the payment should be made within thirty days of plaintiff's executing the release—not from the date on which the last defendant signs the agreement. Therefore, the court erred in enforcing the effective date for payment as defined in defendants' written settlement agreement.

Consistent with Hagrish, "[t]here is no need for further extended proceedings." Id. at 139. The court's April 12, 2024 orders are vacated, and the matter is remanded. The parties shall promptly exchange a release consistent with the essential and limited terms set forth on the record on December 19, 2023. The release shall not include a reciprocal release for plaintiff, or any non-disparagement clause or any other provision not specifically agreed to. The parties may include a confidentiality clause consistent with the representations made during oral argument before this court. Defendants must pay plaintiff $240,000 within thirty days of plaintiff's execution of the release.

21

Finally, plaintiff argues the court erred by not awarding him statutory interest. He asserts the court failed to address his claim for statutory interest based on the delay in payment because it mistakenly concluded he was not entitled to payment unless he executed defendants' settlement agreement. Plaintiff relies on <u>Hagrish</u> for the proposition that he was entitled to statutory interest because there was no need for him to sign a release, and therefore, defendants' payment was due on January 18, 2024, or at the latest by February 11, 2024, when he signed his own form of release.

We reject plaintiff's argument that a release was not an essential term of the settlement agreement for the reasons set forth above. Plaintiff is not entitled to statutory interest because he has not executed a release to satisfy his obligation under the settlement, as the execution of a release was a prerequisite to plaintiff's right to payment. The court correctly noted plaintiff was mistaken to expect payment within thirty days of the in-court settlement because "payment doesn't happen until [thirty] days of the execution of the release." Therefore, the court did not err in failing to address plaintiff's claim for statutory interest.

To the extent we have not specifically addressed any of plaintiff's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

23