**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1115-16T2
     A-3246-16T2
     A-5523-17T1

BRIAN DELANEY, individually
and derivatively on behalf of
CC HOLDINGS, LLC, and
derivatively on behalf of CCSV,
LLC,

  Plaintiff-Appellant,

v.

OWEN DYKSTRA, DOUGLAS
DYKSTRA, and DIMITRIOS
PRASSAS,

  Defendants-Respondents,

and

CC HOLDINGS, LLC, and
CCSV, LLC,

  Nominal Defendants.

_____

DIMITRIOS PRASSAS,
individually and derivatively, and
CC HOLDINGS, LLC,

Plaintiff-Respondents,

v.

BRIAN DELANEY,

     Defendant-Appellant,

and

OWEN DYKSTRA, P.E., and
DOUGLAS DYKSTRA,

     Defendants-Respondents.

_____

OWEN DYKSTRA and CC
HOLDINGS, LLC,

     Plaintiffs-Respondents,

v.

BRIAN DELANEY,

     Defendant-Appellant.

_____

> Argued April 1, 2019 – Decided August 12, 2019
>
> Before Judges Haas, Sumners and Mitterhoff.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. C-000163-14.
>
> Peter R. Bray argued the cause for appellant (Bray & Bray, LLC, attorneys; Peter R. Bray, on the briefs).

A-1115-16T2

Haralampo Kasolas and Jay R. McDaniel argued the cause for respondents (Brach Eichler, LLC, attorneys for respondent Dimitrios Prassas; and Weiner Law Group, LLP, attorneys for respondents Owen Dykstra, P.E., Douglas Dykstra, and CC Holdings, LLC; Haralampo Kasolas, of counsel and on the joint brief in A-1115-16 and A-3246-16, and of counsel and on the brief in A-5523-17; Jay R. McDaniel, of counsel and on the joint brief in A-1115-16 and A-3246-16, and on the brief in A-5523-17.

PER CURIAM

We issue this single opinion for these three appeals, which were consolidated for the purposes of oral argument only. The appeals arise from a dispute between four members of CC Holdings, LLC (CCH), which owned and developed a mixed-use development project in Sparta. Three of the members, Owen Dykstra, Douglas Dykstra, and Dimitrios Prassas (collectively respondents), removed member Brian Delaney because of his alleged hostile and combative behavior towards them and his company's default on a loan from CCH. This led to three separate lawsuits, which were consolidated.

Prior to trial, the parties reached a settlement agreement, which was placed on the record, detailing CCH's purchase of Delaney's interest. Subsequently, an issue arose over the proper timing for payment to Delaney based upon approvals of access permits by the New Jersey Department of Transportation (DOT). Over Delaney's objection, the trial judge granted respondents' motion to enforce the

3

settlement and determined a reasonable security for Delaney's buyout. Litigation continued thereafter regarding the parties' respective efforts to rescind or enforce the settlement.

In A-1115-16, Delaney appeals an order denying his motion to vacate the settlement agreement. In A-3246-16 and A-5523-17, Delaney appeals orders denying his requests to rescind the settlement and granting respondents' requests to enforce the settlement, and awarding attorneys' fees to respondents. For the reasons that follow, we affirm.

I

CCH is the owner and developer of a mixed-use development project (the Project) located on Route 15 in Sparta. The Project consists of residential units, a hotel, and a commercial shopping center anchored by a Shop Rite, owned and operated by Ronetco, Inc. CCH's membership interest was divided as follows: Delaney (33.33%), Prassas (33.33%), Douglas[1] (16.67%), and Owen (16.67%). CCH initially planned to manage the Project by purchasing the foreclosure judgment held by Sovereign Bank on the property they intended to develop. Instead, a new entity, CCSV, LLC (CCSV), which included all of CCH's

---

[1] Because Owen and Douglas share a last name, for convenience we use their first names; we mean no disrespect.

members except Delaney, was formed to purchase the foreclosure judgment and manage the operations.

A dispute developed among the members of CCH over the failure of Windsor Lake Construction LLC, (Windsor Lake) a company controlled by Delaney, to repay a $1.1 million loan to CCH by the April 2014 deadline. Delaney struck a deal with the members to repay the loan so that the proceeds from the loan repayment could be used for the Project. Windsor Lake, however, defaulted; increasing the discord within the CCH membership and leading to discussions regarding the dissolution of CCH or buying out Delaney's interest.

On October 21, respondents executed a written consent to remove Delaney from CCH's management. A few days later, they notified CCH's corporate counsel advising of Delaney's removal as a CCH manager and directing counsel to cease any further communication with Delaney about CCH unless authorized by the remaining members. The following reasons served as their basis for Delaney's removal:

> [i] Delaney's combative, hostile and reckless behavior towards the other members, the company's lender and prospective tenant; (ii) repeated material breaches of various agreements between himself and [the other members] regarding Dykstra Associates' engineering invoices and CCH's accounting and capital accounts; (iii) Delaney's relentless disagreement with the direction of the company and insistence on exercising a

5

minority veto; and (iv) his affiliate company [Windsor Lake's] default on the $1,100,000 loan CCH made to Windsor, coupled with Delaney's intentional failure to use "best efforts" to refinance that loan so CCH could use the funds.

Following Delaney's removal, litigation between him and respondents ensued.

Initially, Delaney filed a complaint against respondents CCH and CCSV, seeking relief for oppression and related claims. Prassas then filed a separate complaint against Delaney, Owen, Douglas, and CCH seeking temporary restraints against Delaney, individually and derivatively. CCH and Owen filed the third complaint seeking similar relief. The three complaints were consolidated.

One week before trial, the parties reached a settlement that was placed on the record. On April 27, 2016, all the parties, with their attorneys present, were sworn and questioned by the Chancery judge as to their understanding of the terms and conditions of the agreement. The settlement terms were as follows:

> [] Delaney will be selling his interest [in] [CCH]. Its principals or it's designee as [CCH] may determine for the amount of $2,800,000 subject to the following terms and conditions.
>
> There is an initial payment of $400,000 that will be made within ten days of signing the definitive agreement. There is a payment due of $1,600,000 which will be paid within sixty days of what the lease with the . . . key tenant describes as the go hard date.

6

The go hard date is the date on which the tenant advises that it's not going to exercise any of its outs of the lease. That . . . is defined in the lease agreement and it will be incorporated into the definitive documents between us.

[CCH] is going to exercise its best efforts to have [Delaney] removed as a guarantor of the existing loan facility with First Hope Bank. But in no event will [] Delaney retain any personal liability for any debt of the company after the closing of any subsequent round of financing. The balance of $800,000 will be payable in three installments . . . , the first of which is due on or before the one-year anniversary of the date on which the go hard notice was given. And the subsequent payments will be due on each anniversary thereafter.

The payments are $250,000 in the first year, $250,000 in the second year, $300,000 in the third year. The balance of that $800,000 that's subject to the installment payments will bear interest at the rate of five percent per [annual] calculated from the date of the go hard notice. The sellers are going to provide the purchasers with a reasonable security that's agreeable to both to secure the installment portion of the payments.

If payment of the full $2.8 million is made on or sixty days of the go hard date, then the purchaser is to receive a discount of $50,000 for the early payment. . . . [I]n that circumstance the total settlement would be $2,750,000. . . . [T]here will be no penalties in the agreement for early payment, which can be obviously done without penalty.

Each side will bear its own cost in attorney's fees. We are going to exchange release except for there is a matter that is pending between [] Dykstra individually

and [] Delaney individually in Sussex County on an unrelated matter that will not be included in this.

Now, with regard to CCSV there . . . were some claims made [in] a case that were dismissed on [s]ummary [j]udgment. We are agreeing that we are releasing all of the claims that were in the case or which could have been brought in the case. This agreement does not govern or in any way restrict rights or remedies as to the relationships of the parties within CCSV going forward. So, that's just going to basically be the status quo.

The settlement terms were later memorialized in writing by the respective counsel.

Shortly after the settlement was reached, an issue arose regarding the "go hard" date for the execution of the Shop Rite lease because the DOT issued a letter on May 3, listing a number of conditions that would have to be satisfied before it issued the access permits. And when the access permits were not obtained, CCH's landlord approvals of May 31, 2016 – the "go hard" date – could not be met and an extension followed.

On July 27, Prassas filed a motion in aid of litigants' rights under Rule 1:10-3 against Delaney to compel enforcement of the settlement agreement, and to determine the "reasonable security" for Delaney's buyout under the settlement.

On October 14, the judge granted the motion to enforce the settlement and required respondents to offer "security to Delaney in the form of personal guaranties, a promissory note" for his 33.33% interest, and attorneys' fees for Prassas. Two weeks later, Prassas filed a motion to secure the appointment of a special court agent under Rule 4:59-2(a) to execute the settlement agreement on Delaney's behalf because he refused to sign the document.

On December 1, a different Chancery judge entered an order granting Prassas' motion to appoint a special court agent, "in light of [Delaney's] refusal to move forward with [the] settlement" agreement, and allowing him to submit a request for attorney fees. The special court agent was vested with the power "to execute any and all documents on Delaney's behalf related to the [s]ettlement [a]greement and the [c]ourt's October 14, 2016 [o]rder . . . ." About four months later, an order was entered on March 16, 2017, awarding Prassas attorney's fees for $5,916.44.

On March 24, respondents were granted two orders to show cause (OTSC) with temporary restraints discharging two lis pendens that Delaney filed against the Project. On March 27, the Law Division, Sussex Vicinage, denied Delaney's motion for a stay of the temporary restraints. The next day, this court denied

Delaney's motion for emergent stay of the March 24 orders to show cause with temporary restraints.

On April 7, the trial court entered an order: (1) maintaining the temporary restraints against Delaney; (2) preliminarily enjoining him from filing further liens or encumbrances against CCH's Project; (3) enjoining him from interfering with CCH's business or Project; (4) staying the Sussex action until adjudication of this appeal; and (5) transferring the Sussex action to the Chancery Court.

In July, Delaney renewed his efforts to curtail the settlement agreement by filing a motion to, among other things, enjoin the selling or encumbering of the Project without providing him thirty days' notice or, in the alternative, maintain the Project's status quo. Prassas cross-moved seeking, among other things, to sanction Delaney for filing a frivolous motion and be awarded attorney fees and court costs. On August 25, the judge entered orders denying all of the parties' motions.

While the parties' unsuccessful motion practice continued in the Sussex action, Delaney, on December 12, moved to stay the October 14, 2016 and December 1, 2016 orders in anticipation of respondents completing his buyout under the settlement agreement. In turn, respondents filed an OTSC with temporary restraints seeking specific performance to finalize the settlement

agreement with the execution of closing documents to terminate Delaney's CCH membership with the $2.8 million buyout. Temporary restraints were denied and the OTSC was converted to a cross-motion.

On January 24, 2018, the judge entered an order denying Delaney's motion for a stay of the October 14, 2016 and December 1, 2016 orders. On February 2, the judge entered an order granting respondents' motion to compel the closing of Delaney's buyout from CCH according to the settlement agreement through the special court agent, and awarding respondents attorney's fees and costs. The judge also denied all pending motions in the Sussex action.

On July 6, the judge entered an order and placed his decision on the record awarding attorney's fees and costs of $10,017.16 to Prassas and $7,977.90 to CCH, Owen and Douglas.

Delaney appeals the October 14, 2016, December 1, 2016, March 16, 2017, January 24, 2018, February 2, 2018, and July 6, 2018 orders.

II

We begin with the acknowledgement that our state has a strong public policy in favor of settlements. Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008). Thus, "settlement agreements will be honored 'absent a demonstration of fraud or other compelling circumstances.'" Nolan v. Lee Ho,

120 N.J. 465, 472 (1990) (internal quotation marks omitted) (quoting <u>Pascarella v. Bruck</u>, 190 N.J. Super. 118, 125 (App. Div. 1983)).

Essentially, a settlement agreement is a contract. <u>See</u> <u>Nolan</u>, 120 N.J. at 472 (citing <u>Pascarella</u>, 190 N.J. Super. at 124). "As a general rule, courts should enforce contracts as the parties intended." <u>Pacifico v. Pacifico</u>, 190 N.J. 258, 266 (2007) (citations omitted). "[P]arties may orally, by informal memorandum, or by both agree upon all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking." <u>Comerata v. Chaumont, Inc.</u>, 52 N.J. Super. 299, 305 (App. Div. 1958). However, when parties contemplate that terms of a preliminary agreement will later be reduced to a formal written contract, whether the preliminary agreement is binding is a matter of the parties' intent. <u>Morales v. Santiago</u>, 217 N.J. Super. 496, 501 (App. Div. 1987).

"Absence of essential terms from a preliminary agreement is persuasive evidence that the parties did not intend to be bound by it." <u>Id.</u> at 502. It is well settled that "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" <u>Weichert Co. Realtors v. Ryan</u>, 128 N.J.

427, 435 (1992) (quoting Borough of W. Caldwell v. Borough of Caldwell, 26 N.J. 9, 24-25 (1958)).  If the parties agree on the essential terms and agree to be bound by those terms, they have created an enforceable contract.  Ibid.

"On a disputed motion to enforce a settlement," a trial judge must apply the same standards "as on a motion for summary judgment[.]"  Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474 (App. Div. 1997).  Thus, the judge "cannot resolve material factual disputes upon conflicting affidavits and certifications."  Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995).  When a judge is faced with disputed material facts in a motion to enforce a settlement, a hearing must be conducted "to resolve the disputed factual issues in favor of the non-moving party."  Amatuzzo, 305 N.J. Super. at 474-75.  However, this court has stressed that not every factual dispute on a motion requires a plenary hearing; a plenary hearing is only necessary to resolve a genuine issue of material fact.  See Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004); Harrington, 281 N.J. Super. at 47; Adler v. Adler, 229 N.J. Super. 496, 500 (App. Div. 1988).

We owe no deference to the "trial court's interpretation of the law and the legal consequences that flow from established facts."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted).

13

And we consider de novo, the trial court's "interpretation of a contract." Kieffer v. Best Buy, 205 N.J. 213, 222 (2011).

A-1115-16

Delaney contends the October 14, 2016 order enforcing the settlement agreement was unenforceable because: (1) it lacked essential terms; (2) it was fraudulently induced; (3) respondents breached the agreement prior to the enforcement hearing; and (4) a plenary hearing was required. We find no merit to these contentions.

Delaney maintains the following essential terms were undiscussed when the parties agreed to settle, and therefore make the settlement agreement unenforceable:

> 1. What is the disposition of the $400,000 payment in the event that [t]he [s]upermarket [l]ease does not "[g]o [h]ard" and no further payments are made to Delaney? Is it subject to return? Is it to be kept and, if so, is it treated like an option payment or does CCH get credit for it?
>
> 2. How long would Delaney remain a [m]ember of CCH, and what distribution does he get?
>
> 3. What happens to Delaney's interest in CCH in the event [t]he [s]upermarket [l]ease does not "[g]o [h]ard"?

4. What happens to the parties' claims in the event that [t]he [s]upermarket [l]ease does not "[g]o [h]ard" and no additional payments are made?

Delaney asserts the terms of the agreement fail to provide remedies for some "very substantial issues . . . – particularly the gap left by not dealing with the consequences attending a failure of the [g]o [h]ard [c]ontingency, which leaves the purchase unconsummated and Delaney without the promised payment." Relying upon <u>Sachau v. Sachau</u>, 206 N.J. 1, 9 (2011) and <u>Karl's Sales and Serv., Inc. v. Gimbel Bros., Inc.</u>, 249 N.J. Super. 487, 493 (App. Div. 1991), he adds "the [t]rial [c]ourt could not step-in and supply [the] omitted essential terms." Consequently, he asserts that a plenary hearing was necessary to determine the missing pieces to their settlement agreement.

Based upon our review of the record, we find no reason to upset the Chancery judge's order that the parties reached a binding settlement that was placed on the record. We agree with the judge's reasoning that:

> All the questions were asked. The parties themselves were sworn in. I asked them questions. The one and only issue that came up during the course of the proceeding that . . . the mechanics of a guarantee was not proposed.

> I asked if this matter was fully settled. Everybody including [] Delaney said yes, [j]udge, it is except for this one issue. That's what he said at the end. I said you know you are giving up your right to a trial,

15

yes, I know that [j]udge. Not his attorney, him, himself under oath said that.

Could the agreement include[] additional terms? Well, I guess it could have. Any agreement can always include additional terms. But the essential elements of the agreement, everybody agreed on the record were there with one exception. That's it.

It was . . . in my view, very carefully done. I have been through too many of these when people say oh [j]udge it's settled and then . . . they leave, and then all of a sudden everybody disagrees. That didn't happen here. Everybody was here a week ahead of time. No pressure for trial they still had a week and an agreement was placed on the record.

So, the matter is concluded. I will grant the application of . . . defendant for what seems to me an extremely reasonable approach to the guaranty issue.

In the case at hand, the parties' intent is clear and it was reflected in the settlement agreement.

As for the agreement's "go hard" date being unspecified, it was tied to the unknown date that the DOT would approve the access permits. The parties were fully aware of the uncertainty regarding the "go hard" date at the time they reached their agreement because it was beyond their control. Delaney's contention that this uncertainty undermines the settlement agreement is unfounded, and because there were no essential settlement terms missing or material facts in dispute, a plenary hearing was not necessary.

A-1115-16T2

As for Delaney's contentions that there was fraudulent inducement and the agreement was breached prior to the enforcement hearing, neither were made before the trial judge. Accordingly, we do not address these contentions now as they do not "go to the jurisdiction of the trial court or concern matters of great public interest." Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

Yet, even considering Delaney's claim of fraudulent inducement, we are unpersuaded. To prove equitable fraud, one must show: (1) a material misrepresentation; (2) the misrepresentation was "made with intent that it be relied on;" and (3) actual detrimental reliance. Nolan, 120 N.J. at 472. Delaney has not presented any proof of being defrauded into entering the settlement agreement. He has not demonstrated that respondents' belief that the DOT would issue the access permit within a month of the April 27, 2015 settlement agreement was a fraudulent misrepresentation, as opposed to their opinion based on their dealing with the DOT. Delaney has not shown that the May time frame was made to induce him to enter into the settlement, nor that he relied on that time frame to his detriment.

A-3246-16

Delaney challenges the December 1, 2016 and March 16, 2017 orders regarding the enforcement of the settlement agreement. He argues the Chancery judge: (1) abused his discretion by prematurely appointing a special court agent to execute the settlement agreement on his behalf; (2) made material changes to the settlement, which diminished his rights as a CCH member; and (3) should not have required him to pay Prassas' attorney fees because he did not breach the agreement. We are unpersuaded.

Rule 1:10-3 "allow[s] for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order." North Jersey Media Grp., Inc. v. State, Office of Governor, 451 N.J. Super. 282, 296 (App. Div. 2017) (alteration in original) (quoting In re N.J.A.C. 5:96 & 6:97, 221 N.J. 1, 17-18 (2015)). "The particular manner in which compliance may be sought is left to the court's sound discretion." Ibid. (quoting Bd. of Educ. of Middletown v. Middletown Twp. Educ. Ass'n, 352 N.J. Super. 501, 509 (Ch. Div. 2001)).

In addition to the mechanism of Rule 1:10-3, Rule 4:59-2(a) provides related support for assisting a litigant in securing relief:

> If a judgment or order directs a party to perform a
> specific act and the party fails to comply within the time

> specified, the court may direct the act to be done at the cost of such defaulting party by some other person appointed by the court, and the act when so done shall have like effect as if done by the defaulting party.

"[T]he Chancery Division has discretion in appointing a receiver or special fiscal agent." New Jersey Realty Concepts, LLC v. Mavroudis, 435 N.J. Super. 118, 123 (App. Div. 2014) (citing Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C. v. Lowenstein Sandler, P.C., 365 N.J. Super. 241, 249 (App. Div. 2003); Roach v. Margulies, 42 N.J. Super. 243, 246 (App. Div. 1956)). We review the court's decision under an abuse of discretion standard. In re Alleged Violations of Law by Valley Road Sewerage Co., 154 N.J. 224, 239 (1998).

We review a trial court's enforcement of litigant's rights under Rules 1:10-3 and 4:59-2 (a), based upon an abuse of discretion standard. Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458-59 (App. Div. 2018) (citing Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011)); Valley Road Sewerage Co., 154 N.J. at 239. "An abuse of discretion occurs when a decision was 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 459 (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

We take no issue with the judge's application of these two rules to appoint a special court agent to execute documents on Delaney's behalf because he failed

19

to adhere to the order enforcing the settlement agreement.  The judge stated in his oral decision:

> Delaney refused to execute the documents, [and] claimed there was no settlement.  Well, that . . . argument is not . . . made; it's at least alluded to that there were problems with the settlement – and I'm not suggesting the settlement is perfect, but the case is settled and now the parties are battling over what . . . documents must be executed in order to finalize this to get [] Delaney his security and to permit the parties to move forward to buy him out.

The judge properly rejected Delaney's argument that he could refuse to sign over his interest in CCH until he was given his $2 million payment. However, as the judge found, "the settlement clearly anticipates Delaney's sale of his ownership interest.  And it is fair to construe the settlement that Delaney will act and comport himself in such a way that it will be possible for the other parties to . . . purchase his interest."

The judge reasoned:

> Now, I did quiz the parties on, you know, what . . . this escrow [means].  And it was explained to me that Delaney will execute the assignment of his one-third interest to the . . . other parties . . . however, the assignment would be of no effect until he gets his . . . money . . . so then in the interim the assignment will be held in escrow and of no legal force and effect, other than to keep him from participating.  But it would not be a final act of conveyance until such time as the assignment would be then released to the other parties

A-1115-16T2

> when . . . Delaney has his money and that one-third interest will then continue as security against the payment of the $800,000.
>
> So I think that's all within the penumbra of the settlement. And, without that, the settlement would never go forward and – <u>so I conclude that over Delaney's continued resistance to all of this that it's necessary to appoint an agent to execute the necessary documents to see to it that this . . . settlement can go forward and . . . this case can finally . . . be resolved</u>.

> [(Emphasis added)]

The judge did not abuse his discretion. The record supports his sound reasoning for the appointment of a special court agent. Moreover, Delaney fails to establish a reason for his delay in signing the necessary documents. The parties, with the advice of counsel, all agreed to the provisions of the settlement on the record; and in order to move forward with the settlement, Delaney must relinquish his ownership interest in CCH in consideration for $2.8 million.

Likewise, we see no abuse of discretion in the order awarding attorney fees to Prassas related to his enforcement of the settlement agreement following the order declaring that the parties reached a binding agreement and they had to abide by it. <u>Rule</u> 1:10-3 allows "[t]he [trial] court in its discretion may make an allowance for counsel fees to be paid by any party to the action to a party accorded relief."

21

Largely, the issues raised in this appeal mirror those raised in the other two appeals and require a similar analysis. That said, Delaney appeals the January 24, 2018, February 2, 2018, and July 6, 2018 orders, which: deny a stay of the October 14, 2016 and December 1, 2016 orders enforcing the settlement agreement; require the transfer of Delaney's interest in CCH to respondents to be carried out by a special court agent; and award attorney fees and costs to respondents totaling $17,995.06.

In brief, we conclude there is no merit to Delaney's contention that the judge erred in denying his stay of the three orders as he failed to demonstrate a substantial likelihood of success on the merits of any proposed appeal, and did not address any of the other factors that must be considered before a stay pending appeal can be issued. See Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982).

We agree with the judge's oral decision findings that Delaney did not demonstrate any irreparable harm because there was no evidence that his interest in CCH would be impaired or destroyed if the orders were not stayed. The three orders put Delaney in the position he bargained for when he entered the settlement agreement – a buyout of his interest in CCH for $2.8 million. Moreover, there was credible evidence supporting the judge's finding that not

proceeding with the buyout would endanger the project and cause financial ruin to all parties involved. Accordingly, it was necessary to order the special court agent to execute any documents required to consummate the buyout, and thereby enable the project to move towards fruition.

Finally, for the same reasons noted earlier, we discern no reason to disturb the judge's award of attorney fees and costs; there was no abuse of discretion. Delaney's continuous ill-fated challenges to the settlement agreement caused his estranged business partners' attorney's fees and costs for which he was held accountable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1115-16T2