**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0371-24

PELAEZ CONSTRUCTION, LLC,

    Plaintiff-Appellant,

v.

GREEN FIELD CONSTRUCTION
GROUP, LLC, GREEN FIELD
BUILDERS GROUP, as Successor
to Green Field Construction Group,
LLC, SEAN BRENNAN and
MICHAEL TENNYSON,

    Defendants-Respondents.

_____

        Argued October 15, 2025 – Decided December 19, 2025

        Before Judges DeAlmeida and Torregrossa-O'Connor.

        On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2155-21.

        John J. Pribish argued the cause for appellant (Pribish-Reiss, LLP, attorneys; John J. Pribish, on the briefs).

        Peter M. Kutil (King & King, LLP) argued the cause for respondents Sean Brennan and Michael Tennyson.

PER CURIAM

Plaintiff Pelaez Construction, LLC filed suit against defendants Green Field Construction Group, LLC, Green Field Builders Group, LLC[1] (company defendants), Sean Brennan and Michael Tennyson (individual defendants), (collectively, defendants), in connection with unpaid construction work plaintiff performed for defendants. Plaintiff now appeals from the trial court's July 8, 2024 order, after a hearing pursuant to Rule 4:43-2(b) (proof hearing), entering judgment against the company defendants in the amount of $202,500, but finding Brennan and Tennyson not individually responsible for damages. Plaintiff also appeals from the trial court's August 30, 2024 order denying reconsideration.

Specifically, plaintiff contends the trial court erred in finding, at the proof hearing's conclusion, plaintiff failed to show the individual defendants were personally responsible for damages, when, at the hearing's outset, the court stated liability was already established by a prior order entering default against

---

[1] Green Field Construction Group, LLC no longer conducts business. Brennan, the Chief Financial Officer and partner, owned thirty percent of the company; Tennyson, an officer and director, also owned thirty percent. Green Field Builders Group, LLC is a successor entity created in 2020. During the litigation, both Brennan and Tennyson were officers and directors of Green Field Builders; Brennan owned thirty percent of the company and Tennyson owned seventy percent.

2                                                                          A-0371-24

all defendants, jointly and severally, and restricted the proof hearing's scope to damages only. A series of motion orders finding the individual defendants willfully obstructed discovery and striking their pleadings and defenses,[2] predated the entry of default. Plaintiff argues it reasonably relied on the trial court's narrow hearing parameters and consequently tailored its presentation to proof of unpaid fees for construction services it satisfactorily performed for defendants. It further argues the trial court's determination overlooks the basis for the default and rewards the individual defendants' willful obstruction of discovery. Plaintiff also contends the trial court improperly calculated damages in the amount of $202,500.

After review of the record under applicable legal principles, we affirm the court's damage calculation, but we are constrained to vacate the portion of the court's order denying judgment against the individual defendants. We remand for a new hearing in accordance with this opinion and the prior court orders entering default against the individual defendants jointly and severally and striking defendants' pleadings based on their non-compliance with discovery.

---

[2] The first motion judge granted plaintiff's motions to compel discovery and later to strike defendants' pleadings first without, and ultimately, with prejudice. The second motion judge entered the default judgment jointly and severally against all defendants based on the discovery violations. Those orders were never appealed.

I.

A.

To contextualize the issues before us, we summarize only the relevant background and history of the litigation. The services for which plaintiff sought payment were related to Green Field Construction's 2018 agreement with Pier Village Urban Renewal, LLC (Pier Village) to construct retail and residential units in Long Branch, on the project known as The Lofts at Pier Village (the Lofts). Originally hired as a subcontractor by Hevy Construction[3] to install drywall and insulation for the Lofts project, plaintiff later agreed orally with Brennan, acting on Green Field Construction's behalf, to finish certain remaining Lofts work when Pier Village terminated Hevy. The parties do not dispute plaintiff satisfactorily completed the work as well as additional tasks performed at Brennan's request.

In April 2021, plaintiff filed an initial complaint against Green Field Construction and Brennan, asserting breach of contract, fraud, and unjust enrichment. Plaintiff sought to "recover monies and damages against [d]efendants Green Field [Construction] and Brennan for having induced

---

[3] We note that Hevy Construction is at times spelled "Heavy Construction" in the trial court transcripts, but it appears the proper spelling is Hevy, and any confusion results from the pronunciation of the company's name in testimony.

[p]laintiff to work at . . . [t]he Lofts," which it performed "in a good and workmanlike manner in a timely fashion," but that Green Field Construction and Brennan "refused to pay all of the sums . . . due and owing to [p]laintiff." After default was entered against defendants for failure to answer, and later vacated by consent, they filed answers asserting separate defenses on July 6, 2021.

Discovery commenced, and plaintiff learned of two ongoing lawsuits: a federal action in which counterclaims by an unrelated party alleged Brennan and Tennyson diverted corporate resources and engaged in other corporate malfeasance in connection with Green Field Construction, and state litigation in which Pier Village filed a complaint against Tennyson and Brennan, alleging they misappropriated funds slated to pay subcontractors. As a result, plaintiff filed an amended complaint in December 2022 adding Tennyson and Green Field Builders as defendants, and alleging Brennan and Tennyson, as owners of Green Field Construction, "induc[ed] [Green Field] Construction to [b]reach [its] [c]ontract with [p]laintiff" by "willfully and deliberately divert[ing] and misappropriat[ing] those monies which were due to [p]laintiff and used said monies for their own personal purposes."

Plaintiff served numerous discovery demands on defendants to obtain relevant information and financial records, including bank statements, checks,

5

and account ledgers, related to Brennan's and Tennyson's alleged misappropriation of funds. Throughout a series of motions, defendants asserted all claims against the individual defendants were unsupported, and plaintiff successfully extended discovery claiming defendants "thwarted" efforts to access information related to their involvement. In April 2023, after repeated unsuccessful discovery requests, plaintiff filed its first motion to compel defendants to provide the information.

In response, defendants asserted all "paperwork, documentation and electronic mail communications related to the Pier Village project . . . were maintained in a DropBox folder," to which employees of both the company defendants and Pier Village had access. Defendants further indicated a Pier Village employee "accessed the DropBox folder" and "deleted every single file," following a dispute. Brennan and Tennyson claimed they possessed no "documents responsive to the subject demands in their individual capacity."

The motion judge granted plaintiff's application, ordering defendants to "produce all documents in response to . . . [p]laintiff's Requests for Production of Documents." The order also stated, "In the event that . . . [d]efendants do not produce all of the documents in response to . . . [p]laintiff's Requests . . . [p]laintiff shall be entitled to move for further relief pursuant to

6

<u>Rule</u> 4:23-5, including and not limited to, striking [d]efendants' Answer and Separate Defenses," and "[p]laintiff may request a case management conference on the issue of spoliation of evidence with the Office of the Civil Presiding Judge."

In June, having not received the requested discovery, plaintiff filed a motion to strike defendants' answers and separate defenses, alleging "[d]efendants are deliberately being evasive and are making every effort to thwart the efforts of . . . [p]laintiff to obtain documents absolutely essential for the prosecution of [p]laintiff's case." Weeks later, the same motion judge struck defendants' pleadings without prejudice finding "[t]he failure of . . . [d]efendant to attempt any good faith efforts to recover the records allegedly purloined by [an employee] of Pier Village is indicative of willful blindness on the part of . . . [d]efendant and cannot be regarded as a valid excuse for not producing the documents." On July 28, 2023, defendants moved for reconsideration, and submitted a certification explaining they tried unsuccessfully to recover the documents in the DropBox folder using a "forensic computer expert," and alternatively, "the only proper party who should have been the recipient of those [discovery] demands, and who had the responsibility to produce those

7

documents, was [Green Field Construction]." The judge denied reconsideration on August 25, 2023.

In September, plaintiff moved to strike and suppress defendants' answers and separate defenses, this time with prejudice. The motion judge granted plaintiff's application, entering the order with prejudice over defendants' opposition following oral argument.

The judge also denied defendants' motions seeking sanctions against plaintiff, reconsideration of the court's prior order striking defendants' answer, and reinstatement of their answer. Defendants argued they made efforts to obtain hard copies of the files plaintiff requested, but claimed the trailer where the files were located "was taken over by the owner of Pier Village to complete the work when it terminated the contract and was not accessible to defendants." Further, Brennan filed a certification claiming he produced all requested documents in his personal possession. Additionally, defendants argued their answers should be reinstated as to Brennan, Tennyson, and Green Field Builders as none were parties to the contract with plaintiff.

Regarding the discovery claims, the court found:

> Defendants claim to know that a former employee, who
> is [t]he son of [t]he owner of Pier Village "purloined"
> their documents and they have been unable to recover
> them. It does not seem that they have made any attempt

to have their former employee return the documents, nor have they taken legal action to recover their stolen property. Defendants also suggest that hard copies of the documents are now in a trailer controlled by Pier Village, yet have not taken any action to have Pier Village return their property.

Thereafter, plaintiff moved for entry of default judgment against all defendants as jointly and severally liable. On January 5, 2024, the second motion judge entered default judgment against defendants "Green Field Construction Group, LLC, Green Field Builders, Sean Brennan and Michael Tennyson, jointly and severally." The order further provided: "A proof hearing is required . . . . All other issues raised in . . . this motion, including but not limited to the nature of the damages being sought" and "the scope of any cross-examination of witnesses, is reserved for the trial judge who conducts the hearing."

B.

A different judge commenced the proof hearing in May 2024. The court immediately addressed the scope of the hearing, asking defendants whether they intended to challenge liability given that the prior judge previously entered default judgment. Defense counsel advised defendants intended to establish "there [wa]s no liability by the personal [d]efendants as well as a limited amount of contractual damages." Plaintiff argued liability had been determined based

9

on defendants' discovery violations, thereby barring defendants from participating in the proof hearing or contesting their liability.

The court then clarified it would not "entertain argument that the individual [d]efendants [we]re somehow not liable or should not have the judgment entered against them," finding it was "bound to give deference" to the second motion judge's default judgment order because it "has already made that determination." The court cited the order's "specific" language entering default "against [d]efendants Green Field Construction Group, LLC, Green Field Builders, Sean Brennan, and Michael Tennyson jointly and severally." (Emphasis added). The court advised it was "not going to let . . . [d]efendants put on a defense, but [it] w[ould] allow [defendants] to cross-examine . . . [p]laintiff's witnesses on the damages issue."

The court explained it understood defendants' request to

> participate as to various issues, but the suggestion is to put them in a better position than a defendant who didn't show up at all, when at least on its face there has been some acceptance in this case that defendants' answers were at least deficient enough to cause their answers to be suppressed.

The court acknowledged the significance of the precursor discovery orders preceding entry of final default, including those compelling discovery and striking the answers and defenses without and with prejudice. It then noted

10

it did not perceive any view of the "backdrop of this case" other than to conclude defendants' "deficien[cy]" precluded them from providing a defense.[4]

Accordingly, the court explained it viewed the default judgment as "a decision on the liability issue in terms of an adjudication on the merits." It held, "To allow . . . defendants to now say, even if it's limited to the individual [d]efendants, should still get a . . . second bite at the apple of arguing liability would in essence be a reward for having refused to engage in discovery."

The court next expressed its rationale for confining the proof hearing to damages only:

> [I]t would essentially send a message or create a policy that [d]efendants could fail to defend their case, fail to provide discovery so that [p]laintiff can prosecute its case, have their answers struck and judgment granted and still come to a proof hearing and essentially still get a trial on the merits.
>
> That is not what the system is built for. It would encourage all [d]efendants frankly to engage in nefarious behavior, and I'm not suggesting that these [d]efendants did, but I think that would be the end result.

---

[4] Although no motion transcripts have been provided to us on appeal, defendants' appendix contains various portions of the parties' motion submissions, which reflect at each juncture the individual defendants unsuccessfully argued they had no personal responsibility for the failure to provide discovery or the destruction of the electronic files.

11

And it would defeat the purposes for which we have default and default judgment procedures and proof hearings, right? Those things only come into play when there have been deficiencies that led to that stage.

Thus, the court found the prior court's order had entered default judgment "as to the individuals," and "required" a proof hearing "on the damages issue" alone.

Plaintiff then proceeded by presenting testimony and evidence regarding the damage calculation. Elisea Pelaez, plaintiff's owner, testified Brennan hired plaintiff directly "to finish the drywall and taping" after Hevy was terminated from completing the work. Pelaez described his "oral agreement" with Brennan to perform the remaining work was never memorialized by written agreement. He explained "during the course of the project, . . . [he] submit[ted] invoices to the super[intendents] or to . . . Brennan for the services," and he was also asked to perform additional work, including some at different locations. He indicated Brennan "wanted to know how much was owed to [plaintiff], because he was going to meet with an attorney to file a notice of unpaid balance," and Pelaez advised Brennan the amount owed was $346,700. Pelaez presented invoices reflecting descriptions of the work performed and its value; specifically, $560,000 for "spackle and sheetrock"; $95,000 for flooring in one of the buildings; $50,000 for "power man"; $54,250 for "touch-up work"; $3,750 for "a job at Fort Lee"; $500 for "a job . . . in Shrewsbury"; $500 for another

"job . . . in Long Branch"; and $1,000 for "soffit work." Pelaez testified plaintiff remained unpaid for services in the amount of $115,700, $8,500, and $20,000, provided prior to Hevy's termination, but contended Brennan agreed to assume that obligation. Pelaez testified plaintiff performed all work at the direction of Brennan or Hevy Construction.

Pelaez indicated he initially agreed with Brennan to a total cost of $589,700. He explained, however, that plaintiff performed additional work, bringing the total cost of the work performed to $591,700. Pelaez stated defendants already paid "$245,000, which left a balance due to [p]laintiff of $346,700." Pelaez indicated plaintiff's checks were signed by Green Field Construction. In addressing an objection unrelated to this appeal, the trial court made another statement regarding the scope of the proof hearing, stating, "I'm allowing [defense counsel] to ask questions as it pertains to the damages and to the extent liability is an issue as it pertains to damages only. I'm not going to let you ask questions that might or might not support another application down the road."

Boris Davila, superintendent of Hevy Construction, testified plaintiff performed at least ninety-eight percent of the work by the time Pier Village terminated its relationship with Hevy. He confirmed he asked plaintiff to

13

"supply additional men on the job site" and to repair damages caused by plumbing and electricians, and neither Green Field, nor Brennan ever "rejected" work performed by plaintiff. Davila explained he always discussed paying subcontractors with Brennan.

At the conclusion of witness testimony, defendants sought to present an excerpt from Pelaez's deposition, which included an "admission that there was only one contract and that it was with Green Field," and defendant Brennan "did not take on any personal responsibility." The trial court again reiterated it "made . . . very clear" it was "not deciding the issue of liability," as the parties and the court already "addressed the fact that [the court's] decision [wa]s limited . . . to damages." Defense counsel responded, stating, "the fact that motions, prior motions, may have been decided in [plaintiff's] favor, that still doesn't relieve [it] of the burden here at the proof hearing to show a prima facie case." The trial court reserved its ruling on the admissibility of this evidence.

On July 8, 2024, the court entered judgment in favor of plaintiff against defendants Green Field Construction and Green Field Builders in the amount of $202,500. In its accompanying oral decision, the court found Pelaez's testimony "was very clear and . . . credible." The court reviewed the testimony, finding Pelaez entered into an oral agreement with Brennan to perform work, and

14

Davila's testimony "corroborate[d] that the work . . . Pelaez conducted was in fact completed and that it was done satisfactorily." It further found that defendants did not pay for all the work that had been completed, citing to the invoices. The court indicated it admitted the excerpt of Pelaez's deposition proffered by defendants, but clarified it found the proffer "really of no moment" to its decision.

The court then calculated damages using unpaid invoices. The trial court examined every invoice and determined that some items predated the Hevy contract and declined to include them in the calculus. The court then found defendants already paid plaintiff $562,000, leaving plaintiff with an unpaid balance of $202,500.[5]

The court next addressed damages owed by the individual defendants. The court commenced its findings stating, "This matter again was before the [c]ourt for a proof hearing with a prior determination regarding liability, but again, I must determine what damages are appropriate for each individual named [d]efendant as per the proofs in particular to this case."

---

[5] It found the following were plaintiff's actual costs for the Lofts and other locations: "$560,000 for spackle; $95,000 for Kadex [(flooring)] . . . ; $50,000 for the 'power man' . . . ; $54,250 for touch-up . . . ; $3,750 for touch-ups . . . ; $500 for [work] in Shrewsbury; $500 for [work] in Long Branch; $1,000 for sheetrock soffit." These costs totaled $765,000.

A-0371-24

The court then noted "there was little, if any" testimony "as to . . . Tennyson and his involvement in this case, and as to . . . Brennan." The court found there was no written contract, and therefore, "no personal guarantees" by the individual defendants.

The court made no reference to the misappropriation allegation against the individual defendants, the prior orders striking defendants' pleadings based on willful noncompliance with discovery, or the default judgment specifically imposing joint and several liability. Citing Pelaez's testimony and plaintiff's invoices, the court declined to assess damages against the individual defendants, finding there was no evidence "they bound themselves to any agreement in terms of actual damages . . . available to them."

Plaintiff thereafter moved for reconsideration contending the court should have found Brennan and Tennyson jointly and severally liable in accordance with the prior default judgment and inferred their responsibility from prior orders finding they obstructed discovery.[6] Plaintiff argued it "would be unconscionable to allow defendants who refuse to produce documents to argue that the plaintiff is not entitled to recovery as to them." Defendants countered

---

[6] The court did not conduct oral argument on the reconsideration motion, and we identify the parties' arguments from the court's written statement of reasons for its decision.

A-0371-24

asserting plaintiff failed to demonstrate the court's decision was arbitrary, capricious, unreasonable, or palpably incorrect, and plaintiff did not present evidence in support of its position the individual defendants were personally liable.

The court denied reconsideration by order dated August 30, 2024 accompanied by a written statement of reasons. The court acknowledged "[p]rior to conducting the hearing, [it] barred [d]efendants from producing witnesses, and limited their cross-examination to the issue of damages, as liability determinations had been made by other [c]ourts prior to the hearing date." It then stated, despite the prior liability determination, "[p]laintiff still ha[d] the burden of demonstrating the amount of damages attributable to each [d]efendant at a proof hearing," and, although "there may be an inference of liability based on [d]efendants' failure to turn over discovery, th[at] d[id] not automatically entitle [p]laintiff to money damages." Specifically, the court found plaintiff was required to show its "entitle[ment] to damages that ha[d] arisen from . . . defendant's breach of contract." The court found "the proofs adduced at the hearing did not support a finding that damages were attributable to" the individual defendants, and "[p]laintiff's testimony was clear that the

agreement was with [d]efendant Green Field and not directly with either individual [d]efendant."

## II.

Plaintiff reprises its arguments on appeal, again contending the court erred by: (1) "revers[ing] itself" and finding, after the hearing's conclusion, plaintiff failed to show the individual defendants personally guaranteed payment for plaintiff's services, when, at the hearing's outset, the court acknowledged Brennan and Tennyson were already found jointly and severally liable and confined the hearing to "damages alone"; (2) "completely overlook[ing]" the prior default judgment of joint and several liability and the prior orders imposing discovery sanctions and determinations; and (3) incorrectly calculating the damage amount.

We defer to a trial court's factual findings absent an abuse of discretion. See Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274, 293 (App. Div. 2021). We likewise review a trial court's denial of a motion for reconsideration under the abuse of discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). An abuse of discretion occurs when the trial judge's "decision [was] made without rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." United States ex rel.

USDA v. Scurry, 193 N.J. 492, 504 (2008) (alteration in original) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).  Legal determinations, however, are not afforded such deference and are reviewed de novo.  See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A.

We first consider whether the trial court's statements when the hearing commenced, confirming its understanding that liability had been decided and confining the inquiry to damages, fairly advised plaintiff of its burden to nonetheless prove the individual defendants' personal obligations to pay plaintiff's fee for services rendered.  We conclude the court's preliminary directions cannot be reconciled with its ultimate determination, depriving plaintiff of a fair opportunity to prepare and present its proof.

To be sure, "the question of what proofs are necessary" to satisfy the plaintiff's burden "is inherently within the judge's discretion."  Chakravarti v. Pegasus Consulting Grp., Inc., 393 N.J. Super. 203, 210 (App. Div. 2007).  Rule 4:43-2(b) clearly vests power in the hearing court to determine the scope and necessity of proof after default has been entered, providing:

> If, to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any allegation by evidence or to make an

investigation of any other matter, the court, on its own motion or at the request of a party on notice to the defaulting defendant or defendant's representative, may conduct such proof hearings with or without a jury or take such proceedings as it deems appropriate.

Once a court dictates the relevant substantive inquiry, it need only determine the sufficiency of the allegations. See Kolczycki v. City of E. Orange, 317 N.J. Super. 505, 514 (App. Div. 1999). Indeed, "trial courts have been directed to view a plaintiff's proofs 'indulgently' . . . and the general practice of our courts has been to require only a prima facie case." Heimbach v. Mueller, 229 N.J. Super. 17, 20 (App. Div. 1988); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 2.2.2 on R. 4:43-2 (2026) (stating "unless there is intervening consideration of public policy or other requirement of fundamental justice, the judge should ordinarily apply to plaintiff's proofs the prima facie case standard of R. 4:37-2(b) and R. 4:40-1, thus not weighing evidence or finding facts but only determining bare sufficiency").

Unlike the majority of jurisdictions in which liability is presumed after default, New Jersey's courts are granted discretion to mandate proof of liability upon default. See Douglas v. Harris, 35 N.J. 270, 276-77 (1961). This is true even when default results from a party's failure to comply with discovery, however deliberate.

More specifically, and relevant here,

> [a]t a proof hearing "ordinarily the decision of whether to require . . . proof [of liability] where there appears to be some question of that right, should be left to the discretion of the judge." Douglas, 35 N.J. at 276-77. For instance, a judge might properly not require a plaintiff to prove liability in a case where the defaulting defendant exclusively controls key evidence. Cf. R. 4:23-2(b)(1), which permits a judge to sanction a party who disobeys a discovery order by entering an "order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order[.]"
>
> However, where in the exercise of discretion, the trial judge at a proof hearing concludes that justice requires the plaintiff to prove liability, if the evidence, even when viewed indulgently, demonstrates that the defendant is not liable, upon timely motion a default judgment entered on that evidence must be vacated under R. 4:50-1(f). See Johnson v. Johnson, 92 N.J. Super. 457, 465 (App. Div. 1966) (defendant may appeal default judgment where plaintiff failed to prove liability and damages after court had ordered her "to prove her case").
>
> [Morales v. Santiago, 217 N.J. Super. 496, 505 (App. Div. 1987) (alterations in original).]

Thus, often depending on the egregiousness of the defaulting party's conduct, courts may infer the evidence withheld would have been beneficial to the non-defaulting party in establishing the claims at issue. See Interchemical Corp. v. Uncas Printing & Finishing Co., 39 N.J. Super. 318, 328 (App. Div.

21

1956) (noting inferences of liability may be drawn from destruction of evidence as "no one who withholds evidence can be in any sense a fit object of clemency or protection" (quoting 2 Wigmore on Evidence § 291 (3d ed. 1940))); see also Jugan v. Pollen, 253 N.J. Super. 123, 134 (App. Div. 1992) ("Where the adversarial nature of the proceeding has been thwarted by a party's default, we strip away that party's rights to participate one by one so as not to prejudice the plaintiff and to punish the contumacious party."). Alternatively, a court may require at least some showing of liability. Morales, 217 N.J. Super. at 505.

Critically, however, regardless of the scope of proof a court requires to sustain a default judgment, the parties must have fair notice to prepare and be heard as to the relevant issues. See Heimbach, 229 N.J. Super. at 26. Fundamentally, "due process requires that a party in a judicial hearing receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" H.E.S. v. J.C.S., 175 N.J. 309, 321 (2003) (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)); see also City of Passaic v. Shennett, 390 N.J. Super. 475, 485 (App. Div. 2007) (stating parties must be afforded "reasonable notice of the nature of the proceeding and a fair opportunity to be heard therein" (quoting Borough of Keyport v. Maropakis, 332 N.J. Super. 210, 220 (App. Div. 2000))).

Here, we are persuaded the court's comments when the proceeding commenced, whether intended or not, conveyed assurance the court narrowed the scope of the hearing to the quantum of damages. We are thus satisfied, plaintiff reasonably concluded it was not required to establish the individual defendants' liability or their responsibility for damages.

We need not recount the court's comments we have already examined in detail. It suffices to observe the court plainly stated it would not "entertain argument that the individual [d]efendants [we]re somehow not liable or should not have the judgment entered against them," and felt "bound to give deference" to the prior motion court that "already made that [liability] determination." There was similarly little ambiguity in the court's identifying the default judgment as "an adjudication on the merits." Nor did the court's lengthy rationale for limiting its inquiry signal the need for more expansive proof. In the court's words, "[t]o allow . . . [d]efendants to now say, even if it's limited to the individual [d]efendants, should still get a . . . second bite at the apple of arguing liability would in essence be a reward for having refused to engage in discovery." The court's reasoning only strengthened the perception that the default order expressly predetermined liability in these circumstances as to all defendants "jointly and severally" based on the discovery violations. Even at

23

the conclusion of the hearing, the court responded to defendants' suggestion plaintiff had not proven the individual defendants guaranteed payment or contracted with plaintiff, indicating it had already "made . . . very clear" their liability had been determined.

Nevertheless, the court ultimately decided plaintiff failed to establish the individual defendants were personally responsible or obligated to pay plaintiff for its services. That determination rested on grounds plaintiff lacked notice it was required to address—grounds not properly litigated based on plaintiff's understandable reliance on the court's hearing parameters.

Here, the trial court at least initially interpreted the motion history to reflect a determination of discovery violations by the individual defendants sufficiently egregious to warrant a determination of liability on the merits. However, the court did not ultimately afford preclusive effect to the prior default determination, which included joint and several liability. At a minimum, in these circumstances, the court should have advised plaintiff of the shift in its focus and of any perceived deficiency in its proof. See Heimbach, 229 N.J. Super. at 27 ("[W]hen a court hearing a plaintiff's ex parte testimony following the defendant's default determines that there has been a failure of proof which can be remedied, the trial court will point out the omissions and give plaintiff

the opportunity to remedy them."). Without proper notice and the opportunity for plaintiff to meet its hidden burden, judgment in favor of the individual defendants cannot stand. See id. at 27-28. Accordingly, we vacate the portion of the court's order confining damages to the company defendants.

B.

We, however, decline plaintiff's invitation to simply direct modification of the order to reflect joint and several liability for all defendants and, instead, remand for further proceedings. Because the full records underlying the January 2024 entry of default and preceding discovery orders were not provided on appeal, we are unable to determine the precise nature of any prior specific findings related to the individual defendants' responsibility for the failure to produce discovery. We note the first motion judge's language in striking defendants' answer and defenses indicated a finding of "willful blindness" by defendants and failure to "take action" to locate the lost records. We cannot, however, sufficiently determine what findings underpinned the second motion judge's entering default judgment against all defendants jointly and severally.

Accordingly, on remand, the court should address the substantive basis for the second motion judge's default order, in particular the imposition of joint and several liability for the individual defendants and any substantive

25

determinations of their responsibility for obstruction of discovery. To the extent their conduct warranted striking their answers and defenses, and likely anchored the joint and several liability order, the remand court should assess whether and to what extent those decisions and inferences therefrom properly preclude or impact plaintiff's burden at any further proof hearing. See Jugan, 253 N.J. Super. at 133 ("[S]ome discretion is placed in the trial court concerning the extent of the sanctions to be visited upon a defendant whose default has been entered as a result of noncooperation in the discovery process.").

We do not intend to suggest the correct outcome of that inquiry. We note only the following additional considerations. Joint and several liability "was designed to obviate a plaintiff's burden of proving which share of the injury each of several defendants was responsible for; the burden of proof is removed from the innocent plaintiff and placed upon the wrongdoers to determine among themselves." Cripps v. DiGregorio, 361 N.J. Super. 190, 196 (App. Div. 2003) (quoting Schettino v. Roizman Dev., Inc., 158 N.J. 476, 484 (1999)). A joint and several liability designation serves a vital burden-lifting function as to damages, and it should not be overlooked or regarded as mere surplusage without sufficient exploration of its basis or intended effect.

A-0371-24

We also note the trial court exclusively focused substantively on the contractual relationship between the parties and failed to recognize the entry of default also pertained to plaintiff's claims of misappropriation by the individual defendants. On remand, any consideration of individual responsibility must concern plaintiff's claims in their entirety.

C.

Finally, we have considered and reject plaintiff's challenge to the court's damage calculation. Plaintiff argues the trial court's findings were "not supported by the testimony or the record," and the court erred when it "deducted the sum of $115,700 as well [as] the additional amounts . . . from the balance due of $346,700." It notes Pelaez's "testi[mony] that money . . . that was owed to him by Hevy was assumed by [d]efendant Brennan."

Pelaez, however, testified the $115,700 was a contract balance plaintiff was "owed by [Hevy] for work that [he] did for them." Although Pelaez claimed Brennan, at some point, advised he would "take care of the balance," the court found the agreement between Hevy Construction and plaintiff "predate[d]" Green Field Construction's hiring plaintiff directly to perform work. The record thus supported the court's conclusion defendants were not responsible for Hevy's non-payment. Accordingly, we will not disturb the court's finding that work

plaintiff performed for Hevy prior to plaintiff's relationship with defendants should not be included in the total amount owed or its final calculation of damages.

Affirmed in part, as to the damage amount against the company defendants; vacated and remanded for further consideration of Brennan's and Tennyson's responsibility for damages. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

28